

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Verónica Rentas Santiago<br><br>Peticionaria<br><br>v.<br><br>Autogermana, Inc.<br><br>Recurrido | Certiorari<br><br>2011 TSPR 131<br><br>182 DPR \_\_\_\_ |

Número del Caso: AC - 2009 - 103

Fecha: 8 de septiembre de 2011

Tribunal de Apelaciones:

Región de Ponce Panel IX

Jueza Ponente:

Hon. Luisa Colom García

Abogado de la Parte Peticionaria:

Lcdo. Gilberto Oliver Dávila

Abogado de la Parte Recurrida:

Lcdo. Frank Zorrilla Maldonado

Materia: Despido Injustificado

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilació n y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Verónica Rentas Santiago
      Peticionaria

            v.

Autogermana, Inc.
      Recurrido

Certiorari

AC-2009-0103

SENTENCIA

En San Juan, Puerto Rico, a 8 de septiembre de 2011.

El presente recurso nos exige determinar si el despido de una empleada luego de ésta haber acudido a la Corporación del Fondo del Seguro del Estado (Fondo) para recibir beneficios al amparo de la Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 1 *et seq.*, conocida como Ley de Compensaciones por Accidentes de Trabajo, constituye un acto en violación de la Ley Núm. 115 de 20 septiembre de 1991, según enmendada, 29 L.P.R.A. sec. 194a *et seq.*, conocida como Ley de Acción por Represalia del Patrono.

Por entender que la peticionaria fue objeto de represalias en su empleo luego de acudir al Fondo para recibir tratamiento por un accidente ocurrido en el trabajo, revocamos en parte al Tribunal de Apelaciones. Veamos.

I.

El 20 de febrero de 2007, la Sra. Verónica Rentas Santiago (señora Rentas Santiago o peticionaria)[1] fue impactada por un brazo mecánico ubicado en la salida de las facilidades de su patrono, Autogermana, Inc. (Autogermana o recurrida). A raíz del referido accidente, la peticionaria solicitó a la recurrida los formularios correspondientes para acogerse a los beneficios administrados por el Fondo. El 23 de marzo de 2007, el patrono entregó a la peticionaria los formularios solicitados.

Posteriormente, el 26 de marzo del mismo año, la señora Rentas Santiago acudió al Fondo para iniciar su proceso de reclamación de beneficios al amparo de la Ley Núm. 45, *supra*. Ese mismo día, la agencia determinó que la peticionaria debía recibir tratamiento mientras se encontraba en descanso. Por tal motivo, el 28 de marzo de 2007, la señora Rentas Santiago comunicó lo anterior a la recurrida.

---

[1] La señora Rentas Santiago laboró como *Administradora de Garantías* en Autogermana, Inc., desde el 20 de febrero de 2006 al 9 de abril de 2007.

Así las cosas, el 29 de marzo del 2007 la Gerente del Departamento de Recursos Humanos de Autogermana, llamó a la peticionaria "para [presionarla]... para que... se reincorporara en su empleo, ya que había mucho trabajo en la empresa".[2] Por causa de lo anterior, la peticionaria gestionó que el Fondo le permitiese recibir tratamiento médico mientras trabajaba (CT). Su petición fue concedida el 30 de marzo de 2007.

Una vez la señora Rentas Santiago se reincorporó a su empleo el 2 de abril de 2007, la peticionaria aduce haber experimentado un patrón de acoso, humillación, menosprecio y hostigamiento constante por motivo de haber instado una reclamación ante el Fondo.[3] De acuerdo a su querella, el referido patrón se manifestó mediante órdenes del patrono que modificaban su horario de trabajo, sus horas de alimentos y restringían su posibilidad de trabajar horas extras.[4]

Lo anterior, unido a rumores de sus compañeros sobre su posible despido, motivó a la señora Rentas Santiago a presentar su renuncia el 9 de abril de 2007.[5] No obstante,

---

[2] Petición de *certiorari*, Apéndice, págs. 58 y 270.

[3] Íd., pág. 271.

[4] Íd. El memo que afectó las condiciones de empleo mencionadas fue emitido por Autogermana el 2 de abril de 2007. Íd. Según el Tribunal de Primera Instancia, la peticionaria fue la única empleada que sufrió las modificaciones de las condiciones de empleo previamente indicadas.

[5] Íd., págs. 58-59.

su dimisión no fue aceptada por la recurrida, la cual, en su lugar, optó por despedirla el mismo día.[6]

Como resultado de los hechos reseñados, el 2 de mayo de 2007, la señora Rentas Santiago presentó ante el Tribunal de Primera Instancia una querella en contra de Autogermana por vía de la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, conocida como Ley de Procedimiento Sumario para Reclamaciones de Obreros y Empleados.[7]  Su querella aducía causas de acción al amparo de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. sec. 185 *et seq.*, conocida como Ley de Despido Injustificado, y la Ley Núm. 115, *supra*.[8]

---

[6] Íd.  De acuerdo a las determinaciones de hecho encontradas por el foro primario, la señora Rentas Santiago fue citada el 5 de abril de 2007 a una reunión con la Directora de Personal y la Sra. Jocelyn Viera.  Petición de *certiorari*, Apéndice, pág. 59.  No obstante, la peticionaria no compareció a la reunión señalada porque tenía una cita previa para ese día por la tarde.  Íd.  En cambio, el 9 de abril de 2007 la señora Rentas Santiago compareció al trabajo con una carta de renuncia la cual fue rechazada por la empresa.  Íd.  En su lugar, el patrono le entregó una carta de despido, la cual fue destruida por la peticionaria debido a un error en la redacción de su nombre.  Íd. Posteriormente, al avisársele que no recibiría la liquidación de ciertos haberes si no firmaba la carta de despido, la peticionaria optó por firmar una segunda carta de destitución con fecha del 5 de abril de 2007.

[7] Véase Petición de *certiorari*, Apéndice, págs. 269-274.  El 19 de julio de 2007, Autogermana presentó una moción solicitando que la querella se ventilara por la vía del procedimiento ordinario.  Íd., pág. 280.  Debido a que la peticionaria no se opuso a la referida moción, el 26 de junio de 2007, el Tribunal de Primera Instancia la declaró Con Lugar.  Íd., pág. 283.

[8] Al amparo de la Ley Núm. 115 de 20 septiembre de 1991, según enmendada, 29 L.P.R.A. sec. 194 *et seq.*, conocida como *Ley de Acción por Represalia del Patrono,* la peticionaria solicitó su reinstalación en su antiguo puesto; $3,950.00 por aquellos ingresos dejados de percibir desde el 9 de abril de 2007 hasta la fecha de la sentencia; $30,000.00 por los supuestos daños y perjuicios experimentados; una suma igual al doble de las cuantías indicadas ($67,900.00); y una suma equivalente al 33% de las cuantías relatadas por concepto de honorarios de abogado.  Íd., pág. 272.
En la alternativa, solicitó la cantidad de $8,777.09, correspondiente al pago de la mesada dispuesto por la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. sec. 185 *et seq.*,

En contestación, el 10 de mayo de 2007, el patrono arguyó, entre otras cosas, que el despido de la señora Rentas Santiago se debió a su pobre desempeño, sus malas actitudes, su alteración de una tarjeta de ponchar y sus ausencias sin notificación.[9]   Según Autogermana, la peticionaria fue objeto de múltiples acciones disciplinarias -verbales y escritas- destinadas a remediar los actos señalados.[10]

Luego de varios trámites procesales, el 15 y el 20 de octubre de 2008 se celebró el juicio en su fondo.[11]   Tras recibir prueba documental y testifical de ambas partes, el 11 de junio de 2009 el foro primario dictó Sentencia.[12]   En ésta, el tribunal sentenciador resolvió que la peticionaria había sido despedida injustificadamente, ya que jamás fue sujeta a un proceso de disciplina progresiva o recibió amonestación o reprimenda alguna por parte de Autogermana.[13]   A su vez, determinó que la recurrida

---

conocida como *Ley de Despido Injustificado*.  Íd., pág. 273.  Además, solicitó que le fuesen pagadas ciertas comisiones por concepto de las garantías obtenidas mientras cubrió las vacaciones de otros administradores de garantía ($1,000.00); $908.60 por concepto de los salarios devengados y no pagados desde el 2 al 9 de abril de 2007, y $2,952.95 por concepto de 16.25 días acumulados de vacaciones. Petición de *certiorari*, Apéndice, pág. 273.

[9] Petición de *certiorari*, Apéndice, pág. 277.

[10] Íd., pág. 276.

[11] Íd., pág. 56.

[12] Esta Sentencia fue notificada a las partes el 1 de julio de 2009. Íd.

[13] Íd., pág. 59.  Según el foro primario, la Sra. Joselyn Viera, Supervisora de la señora Rentas Santiago, redactó un memorando disciplinario el 4 de abril de 2007 el cual detallaba las faltas cometidas por la peticionaria durante el periodo del 19 al 28 de marzo del año indicado.  Íd., pág. 68.  Entre las faltas señaladas, el Tribunal de Primera Instancia resaltó las siguientes: (1) alterar un

despidió a la peticionaria en represalia por ésta haber acudido al Fondo en un momento crítico para la empresa, toda vez que Autogermana estaba atrasada en sus procesos de facturación.[14]

Como resultado –y según lo exige la Ley Núm. 115, *supra*– el tribunal le confirió a la peticionaria la suma de $163,891.56 por concepto de ingresos dejados de devengar ("Back Pay") y $50,000.00 por ingresos futuros ("Front Pay").[15] Igualmente, ordenó a la recurrida a pagar $5,447.42 correspondientes a las vacaciones acumuladas y no liquidadas a la señora Rentas Santiago. Por otra parte, le concedió a la peticionaria el 25% de la suma de las cantidades previamente enunciadas por concepto de honorarios de abogado.[16] Empero, el foro primario no le otorgó a la peticionaria las siguientes partidas: (1) el pago de la mesada al amparo de la Ley Núm. 80, *supra*; (2)

---

ponche de entrada en la mañana del 21 de marzo de 2007 y (2) retirarse temprano de la oficina el 19 de marzo de 2007. Íd., págs. 68-69. Sin embargo, el foro sentenciador no le confirió credibilidad al contenido del memorando ya que éste sancionaba actuaciones de la peticionaria que fueron realizadas meses antes de la redacción del comunicado disciplinario. Íd., pág. 69.

Amerita añadir que este memorando nunca fue entregado a la señora Rentas Santiago. Íd., pág. 68. De acuerdo al patrono, la amonestación escrita nunca se pudo entregar, ya que la señora Santiago Rentas no compareció a la reunión pautada para el jueves, 5 de abril de 2007. Íd., pág. 35. Igualmente, el patrono reconoce que la señora Rentas Santiago nunca recibió una amonestación o reprimenda escrita. Íd.

[14] Petición de *certiorari*, Apéndice, pág. 59.

[15] Íd., pág. 71

[16] Íd..

la compensación solicitada por sus alegados daños y perjuicios; y (3) el pago de comisiones reclamadas.[17]

Inconforme con el dictamen del Tribunal de Primera Instancia, el 19 de agosto de 2009 la recurrida acudió en alzada ante el Tribunal de Apelaciones. En su recurso de apelación, Autogermana le imputó al foro sentenciador haber errado (1) al determinar que el despido de la peticionaria violentó la Ley Núm. 115, *supra*; (2) al concluir que la señora Rentas Santiago fue despedida, y que no renunció voluntariamente a su puesto; (3) en sus determinaciones de hechos y conclusiones de derecho y (4) en el cálculo de la compensación concedida a la peticionaria.[18]

Atendido el recurso de apelación, el foro apelativo intermedio emitió su dictamen el 29 de octubre de 2009.[19] En su decisión, el Tribunal de Apelaciones resolvió que la señora Rentas Santiago había sufrido un despido injustificado y no una renuncia voluntaria, contrario a lo argüido por el patrono.[20] Ello, pues, la peticionaria nunca fue amonestada o disciplinada en sus años de empleo con Autogermana.[21]

---

[17] Íd. El 6 de julio de 2009, Autogermana presentó ante el Tribunal de Primera Instancia una moción solicitando determinaciones adicionales de hechos. Íd., págs. 254-257. El día siguiente sometió una moción de reconsideración. Íd., págs. 258-264. Ambas fueron declaradas No Ha Lugar el 15 de julio de 2009. Íd., pág. 268.

[18] Petición de *certiorari*, Apéndice, págs. 37-52.

[19] Id., pág. 26.

[20] Íd., pág. 16.

[21] Íd., págs. 21-23.

Con respecto a la causa de acción de la señora Rentas Santiago al amparo de la Ley Núm. 115, *supra*, el foro apelativo intermedio concluyó que la peticionaria estableció un caso prima facie de represalias.[22] Sin embargo, entendió que el patrono logró rebatirlo adecuadamente al ofrecer prueba que constataba (1) que existían otros empleados acogidos a los beneficios de la Ley Núm. 45, *supra*, que no sufrieron despidos represivos y (2) que el cambio de la hora de entrada al trabajo de la peticionaria –de 8:00 a.m. a 7:00 a.m.– representó un acomodo razonable el cual no afectó a la señora Rentas Santiago porque ésta siempre llegaba al trabajo a las 7:00 a.m.[23]

Consecuentemente, el Tribunal de Apelaciones desestimó la causa de acción de la peticionaria al amparo de la Ley Núm. 115, *supra*. A la luz de lo anterior, resolvió que la peticionaria sólo tenía derecho al pago de la mesada estipulada por las partes.[24]

En desacuerdo con la Sentencia del foro apelativo intermedio, el 3 de diciembre de 2009 la señora Rentas Santiago presentó ante nos un recurso de apelación. En éste, le imputó al Tribunal a quo los errores siguientes:

**1. ERRÓ EL TRIBUNAL DE APELACIONES AL INTERVENIR CON LA APRECIACIÓN DE LA PRUEBA HECHA POR EL TPI (sic).**

---

[22] Íd., pág. 17.

[23] Petición de *certiorari*, Apéndice, págs. 18-20.

[24] Íd., pág. 21.

**2. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONCLUIR QUE NO HUBO DESPIDO POR REPRESALIA.[25]**

Revisado el recurso de apelación de la peticionaria, el 14 de mayo de 2010 resolvimos acogerlo como una petición de *certiorari* y procedimos a ordenar su expedición. Contando con los alegatos de ambas partes, procedemos a examinar el marco jurídico aplicable a las controversias inicialmente esbozadas.

II.

A. *Principios generales de una causa de acción al amparo de la Ley Núm. 115, supra.*

La Ley Núm. 115, *supra*, "provee protección a empleados frente a represalias que puede tomar un patrono contra éstos por proveer testimonio, expresión o información a un foro judicial, legislativo o administrativo".[26] Esta protección se concretiza en el Art. 2 de la ley bajo examen, el cual dispone lo siguiente:

> (a) Ningún patrono podrá *despedir*, amenazar, o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información *ante un foro legislativo, administrativo o judicial en Puerto Rico*, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley.[27]

---

[25] Íd., pág. 6.

[26] S.L.G. Carrasquillo v. A.A.A., 177 D.P.R. 345, 361 (2009), citando a, Ocasio v. Kelly Servs., 163 D.P.R. 653 (2005).

[27] (Énfasis nuestro.) 29 L.P.R.A. sec. 194a (a).

Cuando un patrono violenta el articulado citado, el estatuto bajo examen le provee al empleado perjudicado una causa de acción en contra del empleador, mediante la cual podrá exigir que se le compense "por los daños reales sufridos, las angustias mentales, la restitución en el empleo, los salarios dejados de devengar, beneficios y honorarios de abogado".[28] Como penalidad por incurrir en la conducta proscrita, "la responsabilidad del patrono con relación a los daños y a los salarios dejados de devengar" estará sujeta a una duplicación.[29]

Al instar una causa de acción al amparo de la Ley Núm. 115, *supra*, el empleado gozará de dos vías probatorias, a saber: (1) la directa y (2) la indirecta.[30] Si optare por la vía indirecta, deberá establecer un caso prima facie de represalia mediante evidencia que demuestre que (1) participó en una actividad protegida por la Ley Núm. 115, *supra*; y (2) que fue subsiguientemente despedido, amenazado o discriminado en su contra por su patrono.[31]

Con relación al primero de los criterios esbozados – que el empleado haya participado en una actividad protegida por la ley bajo análisis- en Irizarry v. J & J

---

[28] Íd., sec. 194a (b).

[29] Íd.

[30] 29 L.P.R.A. sec. 194a (c).

[31] Íd.

Cons. Prods. Co., Inc.,[32] fuimos diáfanos en resolver que cuando un empleado acude al Fondo para acogerse a los beneficios provistos por la Ley Núm. 45, *supra*, tal proceder constituye una actividad protegida por la Ley Núm. 115, *supra*.[33] Ello, pues, el Fondo constituye un foro administrativo protegido por el citado estatuto.

En cuanto al segundo criterio para el establecimiento de un caso prima facie -que el empleado haya sido despedido, amenazado o discriminado en el empleo, *subsiguiente* a su incursión en la actividad protegida- nuestras más recientes expresiones en Feliciano Martes v. Sheraton Old San Juan son pertinentes e indispensables.[34] Allí, manifestamos que este segundo requisito exige que el empleado provea suficiente evidencia indirecta que constate que existe un nexo causal entre su incursión en la actividad protegida y la subsiguiente acción adversa efectuada por el patrono.[35] Al interpretar el Art. 2 de nuestra Ley Núm. 115, *supra*, resolvimos que, "al establecer su caso prima facie,... bastará [que el empleado compruebe]... que la acción adversa que experimentó ocurrió al *poco tiempo* de haber incurrido en la alegada actividad protegida".[36]

Empero, reconocimos que

---

[32] 150 D.P.R. 155 (2000).

[33] Íd., pág. 170.

[34] 2011 T.S.P.R. 97, 182 D.P.R. ___ (2011).

[35] Íd., págs. 31-32.

[36] (Énfasis en el original.) Íd., pág. 35.

no todo caso se configura dentro de un espacio temporal que pueda catalogarse como de *poco tiempo*. Ante tales circunstancias, la proximidad temporal, como inferencia de causalidad, resulta insuficiente, requiriéndose entonces que el empleado constate elementos adicionales que comprueben la existencia de un nexo causal entre la acción protegida y la acción disciplinaria adversa. Así, el trabajador deberá presentar evidencia que establezca (1) que fue tratado de forma distinta a otros empleados; (2) que existió un patrón de conducta antagonista en su contra; (3) que las razones articuladas por el patrono para fundamentar su acción adversa están plagadas de inconsistencias, o (4) cualquier otra evidencia que obre en el expediente para establecer el elemento del nexo causal. Lo anterior implica, necesariamente, un acercamiento caso a caso.[37]

Una vez el empleado evidencie los dos criterios previamente explicados, queda establecido su caso prima facie por represalias. Consecuentemente, se activa una presunción *juris tantum* de violación a la Ley Núm. 115, *supra*.[38] Esta presunción deberá ser rebatida por el patrono, quien vendrá obligado a comprobar que la acción adversa que tomó en contra del empleado estuvo justificada y libre de todo ánimo represivo.[39]

Si la acción adversa tomada por el patrono constituye un despido represivo, éste sólo podrá rebatir la presunción reseñada al comprobar que la destitución del empleado estuvo justificada. Según el Art. 2 de la Ley Núm. 80, *supra*, un patrono podrá despedir *justificadamente* a un empleado, si se configura una de las causales

---

[37] (Énfasis en el original.) Íd., págs. 35-36.

[38] Marín v. Fastening Systems, Inc., 142 D.P.R. 499, 511 (1997).

[39] Íd.

siguientes: (a) que el obrero siga un patrón de conducta impropia o desordenada; (b) la actitud del empleado de no rendir su trabajo en forma eficiente, o de hacerlo tardía y negligentemente, o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento; (c) la violación reiterada por el empleado de las reglas y reglamentos razonables establecidas para el funcionamiento del establecimiento, siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado; (d) el cierre total, temporero o parcial de las operaciones del establecimiento; (e) los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público; y (f) las reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido.[40]

Si el patrono, por preponderancia de la prueba, derrota la presunción de violación a la Ley Núm. 115, *supra*, y establece que el despido del trabajador estuvo justificado, el empleado "aún puede prevalecer si prueba que la razón alegada por el patrono es un simple pretexto para" una acción adversa represiva.[41] Teniendo presente el

---

[40] 29 L.P.R.A. sec. 185b.

[41] Íd.

estado de derecho aplicable a los hechos del caso de marras, pasemos a resolver la controversia inicialmente planteada.

III.

De entrada, anticipamos que, al igual que el Tribunal de Apelaciones, entendemos que los hechos acaecidos el 9 de abril de 2007 representaron un acto de despido y no una renuncia, contrario a lo sugerido por el patrono. Ello es así, pues, la renuncia de la señora Rentas Santiago no fue aceptada por la recurrida, sino que, al contrario, se le informó a la peticionaria que desde algunos días antes se había tomado la decisión de despedirla.

Cónsono con tal determinación, el 9 de abril de 2009 se le entregó a la señora Rentas Santiago una primera carta de despido. Por ésta estar plagada de errores, Autogermana redactó una segunda carta de destitución la cual se le entregó a la peticionaria algunos días después de haberla despedido originalmente. Tal proceder, a todas luces, representó una ratificación por parte del patrono de su decisión inicial de destituir a la peticionaria. Más aún, en la contestación a la demanda presentada por Autogermana, ésta reconoció que sus actuaciones configuraron un despido.[42] No fue sino hasta el inicio de otras gestiones legales posteriores a la contestación de la demanda que la recurrida adoptó como defensa el

_____

[42] Véase Petición de *certiorari*, Apéndice, pág. 277, incisos 7-9.

argumento de que la peticionaria renunció y nunca fue despedida.

Ante tales hechos, resulta forzoso concluir que la señora Rentas Santiago fue despedida y que no renunció. Por tal motivo, nos limitaremos a examinar si dicho despido configuró una violación a la Ley Núm. 115, *supra*, y si el mismo fue uno justificado o no.  Veamos.

Como indicamos anteriormente, un empleado establece un caso prima facie al amparo de la Ley Núm. 115, *supra*, si logra evidenciar dos hechos bases, a saber: (1) que participó en una actividad protegida por la Ley Núm. 115, *supra*; y (2) que fue subsiguientemente despedido, amenazado o discriminado en su contra por su patrono.  Al examinar el caso de autos, coincidimos con el Tribunal a quo en que la señora Rentas Santiago logró establecer un caso prima facie al amparo del citado estatuto.

En primer lugar, y como bien articulamos en <u>Irizarry</u> <u>v. J & J Cons. Prods. Co., Inc.</u>, supra, cuando la peticionaria acudió al Fondo para acogerse a los beneficios provistos por la Ley Núm. 45, *supra*, tal proceder constituyó una actividad protegida por la Ley Núm. 115, *supra*.  En segundo plano, la peticionaria fue despedida cinco días laborables después de haberse reincorporado a su antiguo puesto tras encontrarse en el ejercicio de dicha actividad protegida.  Estos dos hechos, a la luz del derecho esbozado, configuraron un caso prima facie de represalias el cual activó una presunción *juris*

*tantum* de violación a la Ley Núm. 115, *supra*. Ante tal presunción, le correspondía al patrono articular una razón justificada -y no discriminatoria- que legitimara el despido de la señora Rentas Santiago.

En aras de cumplir con dicha encomienda, Autogermana presentó el testimonio de la otrora supervisora directa de la peticionaria, la Sra. Joselyn Viera García. Ésta declaró que dos o tres semanas antes del despido, la señora Rentas Santiago comenzó a comportarse de forma inadecuada.[43] Específicamente, comentó que la peticionaria: (1) en una ocasión discutió con un coempleado en horas laborables y en la oficina en la cual ambos trabajaban; (2) se ausentó de la oficina el 19 de marzo de 2007 por 40 minutos sin autorización; (3) cometió errores en su trabajo de administración de garantías; (4) alteró su tarjeta de ponchar correspondiente al 21 de marzo de 2007 y (5) habló alto por teléfono en horas laborables y por periodos de larga duración.[44]

No obstante, la única evidencia que obra en el expediente para constatar el patrón de conducta inadecuada imputado a la peticionaria, lo es un memorando disciplinario preparado por la señora Viera García el día laborable antes del despido de la señora Rentas Santiago.

---

[43] Petición de *certiorari*, Apéndice, págs. 248-249.

[44] Íd., págs. 231, 240-242.

Como apuntalamos anteriormente, este memorando nunca le fue entregado a la señora Rentas Santiago.[45]

Ante la ausencia de amonestaciones o acciones disciplinarias escritas, sólo queda el testimonio de la señora Viera García frente a las declaraciones de la peticionaria. Ante tales testimonios en conflicto, el Tribunal de Primera Instancia le adjudicó credibilidad a las declaraciones de esta última. Así, resolvió que el único motivo para el despido de la señora Rentas Santiago lo fue su decisión de acogerse a los beneficios provistos por la Ley Núm. 45, *supra*, en un momento de mucho trabajo pendiente en la empresa.

Sabido es que "[las] determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo [el Tribunal de Primera Instancia] para juzgar la credibilidad de las personas testigos".[46] Por tal motivo, "un tribunal apelativo no debe intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad del foro primario a menos que este último haya incurrido en error

---

[45] Aunque el patrono presentó el testimonio del Sr. Rafael Malavé Medina, Gerente del Área de Servicios y supervisor directo de la Sra. Joselyn Viera García, encontramos que éste demostró en sus declaraciones que no conocía personalmente sobre las alegaciones imputadas a la peticionaria, con excepción de una discusión que tuvo ésta con otro administrador de garantías, ya "que no estaba de lleno en la oficina". Véase, Íd., págs. 191-192. Tal admisión le resta credibilidad a su testimonio.

[46] Regla 42.2 de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. V.

manifiesto, pasión, perjuicio o parcialidad".[47]    Al
contrario, los tribunales revisores estamos llamados a
conferirle deferencia a tales adjudicaciones de
credibilidad, ya que son los tribunales sentenciadores
aquellos que se encuentran en mejor posición para evaluar
la credibilidad de un testigo.[48]    A esos efectos, y
considerando el expediente del caso de marras en su
totalidad, no encontramos razones de peso que ameriten
revocar las determinaciones de hechos y las adjudicaciones
de credibilidad efectuadas por el foro primario.

A la luz de todo lo anterior, resulta forzoso colegir
que el patrono no logró establecer que el despido de la
peticionaria se debiese a una de las causales establecidas
en el Art. 2 de la Ley Núm. 80, *supra*. Como resultado, el
patrono no rebatió exitosamente la presunción de despido
represivo que pesaba en su contra.[49]    Ante ello, revocamos

---

[47] S.L.G. Rivera Carrasquillo v. A.A.A., supra, pág. 356, citando a, Flores v. Soc. de Gananciales, 146 D.P.R. 45, 49 (1998); Pueblo v. Maisonave Rodríguez, 129 D.P.R. 49 (1991); Ortiz v. Cruz Pabón, 103 D.P.R. 939 (1975).

[48] S.L.G. Rivera Carrasquillo v. A.A.A., supra, pág. 356, citando a, Ramírez Ferrer v. Conagra Foods PR, 175 D.P.R. 799 (2009); Trinidad v. Chade, 153 D.P.R. 280, 291 (2001); Pérez Cruz v. Hosp. La Concepción, 115 D.P.R. 721, 728 (1984).

[49] El Tribunal de Apelaciones encontró que el patrono rebatió satisfactoriamente la presunción de despido represivo al comprobar que: (1) existían otros empleados acogidos a los beneficios de la Ley Núm. 45, *supra*, que no sufrieron despidos y (2) que el cambio de la hora de entrada al trabajo de la peticionaria –de 8:00 a.m. a 7:00 a.m.- representó un acomodo razonable el cual no afectó a la señora Rentas Santiago porque ésta siempre llegaba al trabajo a las 7:00 a.m.

Sin embargo, tales criterios no abonan a determinar si el despido de la peticionaria estuvo o no justificado –criterio central que debe examinar un tribunal para resolver si el patrono rebatió satisfactoriamente la presunción que obra en su contra-.    Al contrario, esta evidencia sólo aporta al ejercicio de concluir si hubo o no un ánimo represivo en la decisión del patrono.    Incluso, aún tomando esos dos factores para fines de resolver si hubo o no tal

en parte al Tribunal de Apelaciones, en cuanto resolvió desestimar la causa de acción de la peticionaria al amparo de la Ley Núm. 115, *supra*.

IV.

Por los fundamentos antes expuestos, revocamos parcialmente el dictamen del Tribunal de Apelaciones, respecto a su determinación de desestimar la causa de acción de la peticionaria al amparo de la Ley Núm. 115, *supra*. Como resultado, resolvemos que la señora Rentas Santiago tiene derecho al cobro de las partidas originalmente dispuestas por el Tribunal de Primera Instancia, a saber: (1) $163,891.56 por los ingresos dejados de devengar; (2) $50,000 por paga prospectiva ("Future Pay"); (3) $5,447.42 por las vacaciones acumuladas y no liquidadas, y (4) el 25% de la suma de las cantidades indicadas por concepto de honorarios de abogado.

---

ánimo represivo, encontramos que esta evidencia resulta insuficiente.

En primer lugar, el hecho de que los otros empleados acogidos a la Ley Núm. 45, *supra*, pertenecían a otros departamentos de la empresa (Petición de *certiorari*, Apéndice, págs. 223-224) sólo abona a comprobar la intención represiva del patrono, ya que sólo el departamento de cobro de garantías era aquel que se encontraba con atrasos en facturación. Al encontrarse afectada por la ausencia de la peticionaria en un momento crítico para la empresa, Autogermana castigó a la señora Rentas Santiago por recurrir al Fondo.

Con relación al cambio de horario de trabajo, aunque el Tribunal de Apelaciones entienda que éste beneficiaba a la peticionaria por ella llegar siempre temprano a sus labores, eso no quita que ella fue la única que sufrió tal alteración en su itinerario de empleo. Por tal motivo, el ánimo represivo queda evidenciado aún más.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.  La Jueza Asociada señora Fiol Matta emitió Opinión de Conformidad.  La Juez Asociada señora  Rodríguez Rodriguez, no intervino.


                         Aida I. Oquendo Graulau
                    Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Verónica Rentas Santiago
     Peticionaria

        v.                      AC-2009-0103

     Autogermana, Inc.
        Recurrido

Opinión de Conformidad emitida por la Jueza Asociada señora Fiol Matta

En San Juan, Puerto Rico, a 8 de septiembre 2011.

Estoy conforme con la Sentencia que emite el Tribunal en el caso de autos. Entiendo que la misma es producto de una correcta aplicación de nuestra decisión en Feliciano Martes v. Sheraton Old San Juan,[50] particularmente en cuanto la activación y tramitación de un caso *prima facie* bajo la Ley 115 de 20 de diciembre de 1991, mejor conocida como la Ley de Represalias.[51]

Bajo la Ley 115, un reclamante puede probar su causa de acción de dos maneras. La primera es

---

[50] 2011 T.S.P.R. 97, 182 D.P.R. ___ (2011).

[51] 29 L.P.R.A. § 194 *et seq*.

la típica de toda causa de acción en nuestro ordenamiento, la llamada acción ordinaria, en la que el demandante tiene que probar su caso mediante evidencia directa o circunstancial demostrando un nexo causal entre la conducta del demandado y el daño sufrido.[52] La segunda manera de probar su reclamo es estableciendo un caso *prima facie*. A esos efectos, la ley dispone como sigue:

> El empleado podrá, además, establecer un caso *prima facie* de violación de ley probando que participó en una actividad protegida por las secs. 194 *et seq*. y que fue subsiguientemente amenazado o discriminado en su contra de su empleo. Una vez establecido lo anterior, el patrono deberá alegar y fundamentar una razón legítima y no discriminatoria para el despido. De alegar y fundamentar el patrono dicha razón, el empleado deberá demostrar que la razón alegada por el patrono era un mero pretexto para el despido.[53]

Como se desprende de lo anterior, para poder establecer un caso *prima facie* al amparo de la Ley 115, todo lo que el empleado debe demostrar es que (1) participó en una actividad protegida y (2) que fue despedido, amenazado o discriminado subsiguientemente.[54] Este segundo requisito, a su vez, requiere la demostración de dos elementos: una acción adversa hacia el empleado y que dicha acción sea subsiguiente a la conducta constitutiva de actividad protegida. Es decir, que haya proximidad temporal entre ambos sucesos. En Feliciano Martes v. Sheraton Old San Juan

---

[52] 29 L.P.R.A. § 194a(c). "El empleado deberá probar la violación mediante evidencia directa o circunstancial".

[53] *Id.*

[54] Sobre lo que constituye actividad protegida para efectos de la Ley 115, véase el artículo 2 de dicho estatuto.

resolvimos que si dicha acción adversa ocurre al poco tiempo de que el empleado haya incurrido en alguna actividad protegida, esto será suficiente para activar un caso *prima facie*. Ello es cónsono con el mandato legislativo que condiciona la existencia de un caso *prima facie* a que la acción adversa haya ocurrido subsiguientemente al ejercicio de la actividad protegida.

Si el empleado demuestra que, en efecto, llevó a cabo una actividad protegida y que subsiguientemente sufrió una acción adversa, ello será suficiente para establecer un caso *prima facie*. En dicho caso, le corresponde al patrono demostrar que la acción adversa que tomó en contra del empleado estuvo justificada y libre de todo ánimo represivo.[55] De no presentar prueba a esos efectos o de ésta ser insuficiente para derrotar el caso *prima facie* el empleado prevalecerá en su causa. Si el patrono demuestra que no hubo ánimo de represalia o, en casos de despidos, que hubo justa causa, ello derrota el caso *prima facie*. Cuando esto ocurre, el empleado tiene una segunda oportunidad para presentar prueba que demuestre sus alegaciones mediante preponderancia de la evidencia, como en cualquier otro caso civil. En ese caso, tendría una oportunidad para demostrar que las explicaciones presentadas por el patrono eran un mero pretexto.

---

[55] *Marín v. Fastening Systems, Inc.*, 142 D.P.R. 499, 511 (1997).

El esquema probatorio establecido en la Ley 115, que facilita la activación de un caso *prima facie,* es parte de una importante política pública que protege a los trabajadores y trabajadoras para que, en caso de que acudan a los organismos gubernamentales, lo hagan sin miedo a ser castigados por sus patronos. De esta manera, la Ley protege a los trabajadores y trabajadoras, más que del capricho, de la venganza patronal. Con ello en mente, la Asamblea Legislativa estableció un mecanismo probatorio sencillo para estos casos. De lo contrario, es decir, si no existiera la posibilidad de presentar un caso *prima facie* como explicáramos anteriormente, los trabajadores se inhibirían de ofrecer información valiosa a los foros gubernamentales por miedo a ser víctimas de represalias y a no poder probar dicho castigo en un tribunal. En el caso de autos, al aplicar correctamente nuestra decisión en <u>Feliciano Martes v. Sheraton Old San Juan</u>, el Tribunal reconoce y fortalece el esquema estatutario que nuestros legisladores diseñaron para proteger la clase trabajadora en casos de represalias.

Liana Fiol Matta
Jueza Asociada