Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| KATHERINE GONZÁLEZ RIVERA<br><br>APELANTE<br><br>v<br><br>AUTORIDAD PARA EL FINANCIAMIENTO DE LA VIVIENDA DE PUERTO RICO<br><br>APELADOS | KLAN202500153 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2022CV11322<br><br>Sobre:<br>Despido por represalias (Ley Núm. 115 de 20 de diciembre de 1991); Procedimiento Sumario (Ley Núm. 2 de 17 de octubre de 1961) |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, y el Juez Rodríguez Flores.

Pagán Ocasio, juez ponente.

## RESOLUCIÓN

En San Juan, Puerto Rico, a 30 de abril de 2025.

### I.

El 24 de febrero de 2025, la señora Katherine González Rivera (señora González Rivera o apelante) presentó una *Apelación* en la que solicitó que revoquemos una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario) el 12 de febrero de 2025, notificada y archivada en autos digitalmente el 13 de febrero de 2025.[1] En el dictamen, el TPI declaró Ha Lugar la *Moción de Sentencia Sumaria* presentada por la Autoridad para el Financiamiento de la Vivienda de Puerto Rico (AFV o parte apelada) y, en consecuencia, desestimó, con perjuicio, la *Querella* sobre despido en represalias promovida por la señora González Rivera.

Junto al recurso, presentó una *Moción al amparo de las Reglas 16 y 70 del Reglamento de este Honorable Tribunal de Apelaciones*

---

[1] Apéndice de la *Apelación*, Anejo 14, págs. 512-529.

en la que solicitó que autorizáramos la presentación del recurso en exceso de páginas.

El 27 de febrero de 2025, emitimos una *Resolución* en la que autorizamos la presentación del recurso de apelación en exceso de las páginas reglamentarias y le concedimos a la AFV hasta el 26 de marzo de 2025 para presentar su alegato en oposición a la *Apelación*.

En cumplimiento con lo solicitado, el 26 de marzo de 2025, la parte apelada presentó el *Alegato de la parte apelada* en la que solicitó que confirmemos la *Sentencia* apelada.

Con el beneficio de la comparecencia de ambas partes, damos por perfeccionada la *Apelación* de epígrafe y, en adelante, pormenorizamos los hechos atinentes a este recurso.

**II.**

El caso de marras tuvo su génesis el 29 de diciembre de 2022 cuando la señora González Rivera radicó una *Querella* en contra de la AFV, al amparo de la *Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial*, Ley Núm. 115 del 20 de diciembre de 1991, según enmendada, 29 LPRA sec. 194 *et seq.*[2] Solicitó que la misma se tramitara bajo el procedimiento sumario contemplando en la *Ley de Procedimiento Sumario de Reclamaciones Laborales*, Ley Núm. 2 del 17 de octubre de 1961, según enmendada, 32 LPRA sec. 3118 *et seq.* Alegó que fue despedida en represalias por realizar unas consultas a la Oficina del Inspector General (OIG) y a la Oficina del Contralor de Puerto Rico (OCPR) con relación a los pagos de las facturas de dos contratos otorgados por la AFV.

Se desprende de la *Querella* que la señora González Rivera trabajó en el puesto de Directora Ejecutiva Auxiliar del Área Fiscal adscrito a la Oficina de la Directora Ejecutiva de la AFV, que

---

[2] Íd., Anejo 1, págs. 1-7.

pertenece al servicio de confianza. Dicho puesto tiene entre sus responsabilidades, asesorar al Director Ejecutivo y demás ejecutivos de la alta gerencia respecto a la política pública, las pautas y normas a seguir para establecer y cumplir con la misión, metas y objetivos de la AFV.

La apelante arguyó que, tomando en consideración las obligaciones y responsabilidades que conlleva su puesto, decidió hacer la consulta tanto a la OIG como a la OCPR. Mencionó que, recibió las respuestas a ambas consultas y las notificó a la gerencia de la AFV indicando que las mismas eran contradictorias. Así las cosas, adujo que, el 17 de octubre de 2022 fue despedida sin justa causa, pasada una (1) hora de haberse llevado a cabo una reunión en la que se le cuestionó sobre las consultas realizadas y se le increpó por solicitar dos opiniones a dos agencias distintas. La apelante argumentó que las consultas que realizó constituyen una actividad protegida por la Ley Núm. 115-1991, *supra.*

El 20 de enero de 2023, la AFV presentó la *Contestación a querella* en la que alegó que las consultas realizadas por la querellante a la OCPR y OIG no constituyen una actividad protegida porque se hicieron por instrucciones de la alta gerencia de la AFV en cuanto al pago de varias facturas.[3] Añadió que las consultas tanto a la OIG como a la OCPR son trámites ordinarios que realiza la AFV cuando surge una duda o preocupación en relación con los procesos de contratación y pago de servicios. La parte apelada enfatizó que la señora González Rivera era empleada de confianza y de libre remoción. Por ello, alegó que fue relevada de su puesto porque le retiraron la confianza.

Una vez culminado el descubrimiento de prueba, el 25 de agosto de 2023, la AFV presentó la *Moción de Sentencia Sumaria* en

---

[3] Íd., Anejo 2, págs. 8-16.

la que solicitó la desestimación de la causa de acción incoada por la apelante.[4] Según planteó, no existe controversia sobre que la señora González Rivera ocupó un puesto de confianza en la AFV y que era uno de libre selección y remoción. Arguyó que la apelante fue removida de su puesto cuando dejó de gozar de la confianza de la Agencia. Asimismo, adujo que, la apelante no pudo producir prueba documental o evidencia admisible que pueda sostener una causa de acción por represalias.

En resumen, manifestó que la determinación de remover a la señora González Rivera de su puesto de confianza se da tras ésta no realizar sus labores conforme a la política pública de la AFV, y por problemas de ejecución de su responsabilidad de la implantación de dicha política pública. Además, la AFV arguyó que la apelante había demostrado falta de interés a asistir a las reuniones semanales y discutir los asuntos importantes de su área de supervisión con la dirección ejecutiva. También, adujo que había un problema de confianza, debido a que presuntamente la apelante realizaba gestiones que afectaban las relaciones interagenciales y las operaciones de la AFV a espaldas de su supervisor y de la Directora Ejecutiva.[5] Por último, alegó que el trámite de presentar consultas sobre contratos gubernamentales, pagos de contratos y de procedimientos auditados o regulados por la OCPR o OIG son parte de las funciones inherentes al puesto de Director Ejecutivo Auxxiliar y de cualquier funcionario ejecutivo de la AFV y que estas siempre son recomendadas y/o avaladas por el Sub Director Ejecutivo.[6] Así, argumentó que, las consultas a la OCPR y OIG son trámites ordinarios que realiza la AFV cuando surge una duda o

---

[4] Íd., Anejo 4, pág. 19-80.
[5] Íd., Anejo 4, pág. 21. Véanse los hechos propuestos como incontrovertidos núm. 12-13.
[6] Íd., Anejo 4, pág. 26. Véase el hecho propuesto como incontrovertido núm. 42.

preocupación con relación a los procesos de contratación y pago de servicios.[7]

Por esas razones, alegó que no hubo represalias porque se trató de una empleada de confianza y el retiro de dicha confianza se dio dentro del marco de la ley aplicable. Añadió que la acción de realizar las consultas relacionadas a asuntos inherentes al departamento que ésta dirigía es inherente a sus funciones como Directora Ejecutiva Auxiliar.

El 10 de octubre de 2023, la apelada presentó la *Moción en oposición a moción de sentencia sumaria presentada por la parte querellada* en la que solicitó que se declarase No Ha Lugar a la *Moción de sentencia sumaria* promovida por la AFV por entender que existen hechos en controversia.[8]

En la misma fecha, las partes conjuntamente presentaron el *Informe de conferencia con antelación al juicio* en el que estipularon veinticinco (25) hechos.[9]

El 12 de octubre de 2023, se celebró una *Conferencia con antelación a juicio*, cuyas incidencias quedaron recogidas en una Minuta transcrita el 19 de octubre de 2023.[10] Como resultado, el TPI concedió a la señora González Rivera la oportunidad de tomarle deposición al señor Miguel Matos Flores —Sub Director Ejecutivo de la AFV— para que luego las partes tuviera la oportunidad de presentar nuevamente la moción de sentencia sumaria y su oposición.

El 24 de junio de 2024, la señora González Rivera presentó una *Moción en oposición a moción de sentencia sumaria presentada por la parte querellada y solicitud de sentencia sumaria a favor de la parte querellante* en la que, nuevamente, solicitó al foro primario que

---

[7] Íd., Anejo 4, pág. 27. Véase el hecho propuesto como incontrovertido núm. 46.
[8] Íd., Anejo 5, págs. 81-120.
[9] Íd., Anejo 6, págs. 121-146.
[10] Íd., Anejo 8, págs. 169-172.

declarara No Ha Lugar la *Moción de sentencia sumaria* promovida por la AFV.[11] Adujo que estaban en controversia los siguientes asuntos:

1. Determinar si la terminación de empleo de la querellante fue conforme a la normativa aplicable a los empleados en el servicio de confianza en el sector público o si, por el contrario, la querellante fue objeto de represalia alguna en el empleo en contravención a las disposiciones de la Ley Núm. 115-1991.
2. Determinar si procede la restitución de un empleado a quien se le ha removido de un puesto de confianza como remedio judicial y a tenor con las disposiciones de la Ley Núm. 115-1991.
3. Determinar si la querellante tiene a su haber una reclamación por concepto de daños y perjuicios al amparo del Código Civil de Puerto Rico.

La señora González Rivera alegó que mientras ocupó el puesto de Directora Ejecutiva Auxiliar Ejecutiva, la AFV incurrió en actos en violación a la Ley Núm. 115-1991, *supra*. Arguyó que participó de una actividad protegida porque realizó unas consultas ante la OIG y OCPR para cuestionar la procedencia de unos pagos que fue instruida a emitir por la AFV y que por esa razón fue despedida. También, adujo que resulta claro que fue despedida a solo una (1) hora de llevarse a cabo la reunión en la que se le cuestionó sobre las consultas realizadas y que eso es suficiente para establecer que participó en una actividad protegida por la Ley Núm. 115-1991, *supra*, y que por esa razón fue despedida.

El 5 de agosto de 2024, el TPI emitió una *Orden* concediéndole diez (10) días a la AFV para informar si se reafirmaba en su *Moción de sentencia sumaria* presentada el 25 de agosto de 2023.[12]

Al requerimiento del TPI, el 15 de agosto de 2024, la AFV presentó una *Moción en cumplimiento de orden y solicitando termino para presentar réplica a moción en oposición y en solicitud de sentencia sumaria presentada por la querellante* en la que informó al

---

[11] Íd., Anejo 9, págs. 173-472.
[12] Íd., Anejo 10, pág. 473. Notificada y archivada digitalmente en autos el 6 de agosto de 2024.

foro primario que se reiteraba en la *Moción de sentencia sumaria* que previamente radicó.[13]

El 30 de agosto de 2024, la AFV presentó una *Réplica a oposición a moción de sentencia sumaria y oposición a solicitud de sentencia sumaria en favor de la querellante* en la que arguyó que los hechos que propuso como incontrovertidos en la *Moción de sentencia sumaria* están apoyados por la prueba documental anejada a la misma y que no fueron controvertidos por la apelada.[14] Expuso sobre varios hechos propuestos como incontrovertidos que, a pesar de que la apelante los negó en su oposición, no presentó ningún documento y/o declaración jurada para controvertirlos. Asimismo, arguyó que la apelante incluyó documentos que no estaban relacionados con los hechos esenciales propuestos como no controvertidos.

La parte apelada arguyó que la señora González Rivera incumplió con la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, al descansar en sus alegaciones para oponerse a la solicitud. Asimismo, insistió en que la apelante no pudo establecer en su oposición hechos fundamentados en prueba documental o evidencia admisible que puedan establecer una causa de acción por represalias. Reiteró que a la señora González Rivera le retiraron la confianza por sus actuaciones y conducta y por ocultar información importante a sus supervisores relacionadas con los pagos de las facturas de dos contratos otorgados por la AFV. Arguyó que los hechos esenciales quedaron establecidos por la declaración jurada y deposición del señor Matos Flores. Por lo cual, nuevamente alegó que la apelante no tiene derecho al remedio de la restitución ni una reclamación de daños y perjuicios por la remoción de su puesto de confianza.

---

[13] Íd., Anejo 11, págs. 474-475.
[14] Íd., Anejo 12, págs. 476-499.

El 26 de septiembre de 2024, la señora González Rivera presentó una *Dúplica a réplica presentada por la parte querellada* en a la que reiteró los argumentos esbozados en la oposición.[15] Adujo que no existe un motivo racional para el despido de la apelante, más allá de que el mismo se realizó en represalias por las consultas realizadas por esta a la OIG y la OCPR. Ademas, planteó que no procede la *Moción de sentencia sumaria* promovida por la parte apelada porque, según alegó, los hechos propuestos como incontrovertidos no son hechos medulares y esenciales en el caso. En cambio, alegó que es un hecho esencial e incontrovertido que el despido tuvo lugar días después de que la apelante realizara las consultas y notificara su resultado. Así las cosas, argumentó que las consultas que realizó están protegidas por la Ley Núm. 115-1991, *supra*. Asimismo, expresó que existe proximidad temporal entre la consulta, el resultado y el despido.

El 12 de febrero de 2025, el TPI emitió una *Sentencia* en la que declaró Ha lugar la *Moción de sentencia sumaria* promovida por la AFV y desestimó la *Querella*[16]. En dicha *Sentencia*, el foro primario consideró probados los siguientes hechos materiales[17]:

1. La querellante laboró en la AFV desde el 15 de noviembre de 2021 hasta el 17 de octubre de 2022.
2. La querellante mientras laboró en la AFV ocupó el puesto de Directora Ejecutiva Auxiliar del Área Fiscal.
3. El puesto de Directora Ejecutiva Auxiliar está clasificado en el servicio de confianza.
4. La querellante laboró para la parte querellada durante once (11) meses. A la fecha en que fue removida de su puesto de confianza esta devengaba un salario anual de $98,000.00, equivalente a $8,166.67 mensuales y $1,884.62 semanales. La querellante disfrutaba, además, de beneficios marginales, tales como licencia de vacaciones y enfermedad, bono de navidad, plan médico, seguro de vida, seguro de incapacidad no ocupacional (SINOT) y otros.
5. El supervisor directo de la querellante era el Sub Director de la AFV, Miguel Matos Flores.
6. Los puestos de confianza en el servicio público son de libre selección y remoción.
7. La querellante no pasó por un proceso de convocatoria para dicho puesto.

---

[15] Íd., Anejo 13, págs. 500-511.
[16] Íd., Anejo 14, págs. 513-529.
[17] Íd., págs. 516-522.

8. La querellante fue contratada para el puesto de Directora Ejecutiva Auxiliar por Miguel Matos Flores y Blanca Fernández (Directora Ejecutiva de AFV).

9. La querellante sabía que estaba siendo nombrada a un puesto en el servicio de confianza, y que en el momento en que su supervisor inmediato o la Directora Ejecutiva, no tuvieran confianza o le quitaran la confianza porque entendiesen que no estaba haciendo sus labores conforme a la política pública, éstos tenían la facultad para removerla de su puesto.

10. Mientras trabajó para la AFV la querellante acusó recibo del Reglamento de Personal (Manual del Empleado de AFV).

11. La querellante nunca ocupó un puesto de carrera en la Autoridad.

12. En la AFV no existe un procedimiento de evaluaciones escritas de desempeño para los empleados de confianza.

13. La querellante no se enteró de una reunión de los directores que se llevó a cabo el 26 de septiembre de 2022 de forma presencial en vez de forma virtual y a la cual ésta no compareció, ni se excusó.

14. El 28 de julio de 2022, la AFV otorgó el Contrato Interagencial de Arrendamiento 2023- PRH017, con el Banco de Desarrollo Económico (en adelante "BDE"), para el cual recibió una factura de cobro de arrendamiento por el mes de julio de 2022. La factura tiene fecha de 28 de julio de 2022.

15. La Oficina de Pre-intervención de la AFV procesó el pago de la factura del mes de julio de 2022 del BDE mediante pago por transferencia electrónica y luego reversó dicho pago al entender que no procedía el mismo, y procedió a realizar una consulta a la División Legal.

16. El 16 de septiembre de 2022, la Lcda. Tania Uriarte Méndez, Asesora Legal de la Oficina de Servicios Legales de la AFV (en adelante, Lcda. Uriarte), le envió un correo electrónico al Director de Contabilidad y Pre-Intervención, Héctor Orsini, el cual responde a una consulta sobre si procedía o no el pago de la factura al BDE correspondiente al mes de julio de 2022. En dicho correo electrónico ésta indicó que, en su opinión legal, el pago procedía conforme a las Cláusula 5.3 del contrato.

17. El 30 de agosto de 2022, la AFV otorgó con Santiago Muffler Shop Inc., un Contrato de Servicios de Almacenamiento 2023-PRH041 con vigencia inmediata. La AFV recibió las facturas INV-01 y INV-02 requiriendo el pago por almacenamiento por los meses de julio y agosto de 2022. Ambas facturas fueron presentadas con fecha de 30 de agosto de 2022.

18. La Oficina de Pre-intervención no aprobó el pago de las facturas del 30 de agosto de 2022 presentadas por Santiago Muffler Shop, Inc., correspondientes a los meses de julio y agosto de 2022, y procedió a realizar una consulta a la División Legal.

19. La Lcda. Uriarte, también fue consultada en relación a las facturas de pagos de los meses de julio y agosto de 2022 de Santiago Muffler Shop. Inc. y su opinión legal, fue que no procedía que la AFV realizara el pago de la factura del mes de julio, pero que la factura de agosto podía ser pagada debido a que la vigencia del contrato y la fecha de la factura era la misma.

20. El 23 de septiembre de 2022, la querellante notificó al Sub Director Ejecutivo, mediante correo electrónico con copia a la Directora Ejecutiva y a otros funcionarios de la AFV una controversia relacionada con el pago de unas facturas por concepto de arrendamiento de espacio de almacenamiento de AFV con Santiago Muffler Shop Inc.

21. Mediante dicha notificación la querellante informó que ya tenía una opinión de una de las Asesoras Legales de la AFV, la Lcda. Uriarte, pero que aun así recomendaba solicitar una consulta formal a la Oficina del Contralor sobre si procedía el pago de la factura de Santiago Muffler Shop Inc. correspondiente al mes de julio y agosto de 2022.

22. El 26 de septiembre de 2022 a las 12:11 de la tarde, la querellante notificó al Sr. Matos mediante correo electrónico con copia a la Directora Ejecutiva y a otros funcionarios de la AFV una controversia relacionada con el pago de la factura correspondiente al Contrato Interagencial que mantiene la AFV con el BDE.

23. Mediante dicha notificación la querellante informó que el contrato de arrendamiento con el BDE había sido firmado (en cuanto a su renovación) el 28 de julio de 2022 y que, por tanto, el pago correspondiente a la factura por el arrendamiento del mes de julio de 2022, a pesar de que ya se había remitido, había sido cancelado.

24. En el correo electrónico del 26 de septiembre de 2022, la querellante informó, además, que en relación al pago en controversia al BDE una de las Asesoras Legales de la AFV, la Lcda. Uriarte también había emitido una opinión legal mediante la cual recomendaba el pago. No obstante, González levantó una preocupación con el pago y recomendó solicitar una consulta sobre dicho asunto a la OCPR.

25. La querellante junto con el correo electrónico del 26 de septiembre de 2022 relacionado al Contrato del BDE, incluyó una cadena de correos electrónicos previos, que incluían una opinión de la Asesora Legal del BDE sobre el requerimiento del pago de arrendamiento de sus facilidades y otra comunicación del Gerente Interino de Servicios de Administración del BDE exigiendo el pago de la factura por concepto de arrendamiento de las facilidades del BDE durante el mes de julio de 2022.

26. El 27 de septiembre de 2022, el Sr. Matos, junto con la Directora Ejecutiva y el Lcdo. Eduardo Bonar, Ayudante Ejecutivo, se reunieron con la querellante a fin de discutir las controversias relacionadas al pago de las facturas de los contratos de Santiago Muffler Shop Inc. y del BDE.

27. En dicha reunión, se le preguntó a la querellante el por qué si ya se tenía una opinión legal de la Lcda. Uriarte sobre los pagos de las facturas en cuestión, el Área Fiscal no los había emitido, a lo cual ésta expresó que tenía sus dudas en cuanto a si con el pago de las facturas no se estaba incurriendo en algún incumplimiento con las normas de contratación establecidas por la OCPR, y que se sentiría más cómoda si se hacía la consulta a dicha agencia.

28. Luego de escuchar la explicación de la querellante se acordó que no se realizaría el pago, hasta tanto se hiciera la correspondiente consulta a la OCPR. Dicha gestión de hacer la consulta le fue delegada a la querellante.

29. El 28 de septiembre de 2022, a las 2:33, el Sr. Matos le remitió un correo electrónico a la querellante para que le confirmara si ya había realizado la consulta a la OCPR.

30. En respuesta a dicho correo electrónico, en esa misma fecha, González Rivera informó que la estaba trabajando.

31. El 28 de septiembre de 2022, a las 3:59 de la tarde, la querellante remitió vía correo electrónico la consulta a la OCPR sobre las facturas en controversia del Contrato con Santiago Muffler Shop, y remitió copia de esta a su supervisor.

32. El 28 de septiembre de 2022, a las 4:28 de la tarde, González remitió vía correo electrónico la consulta a la

OCPR sobre la factura en controversia del Contrato por concepto del arrendamiento de la Sede de la AFV con el BDE, y remitió copia de esta a su supervisor.

33. El 29 de septiembre de 2022 la querellante remitió una consulta a la OIG con relación a la factura por concepto de arrendamiento del mes de julio de 2022 relacionada al Contrato Interagencial de Arrendamiento 2023- PRH017 de la AFV con el BDE. La querellante no copió a Sr. Matos ni a ningún otro funcionario ejecutivo de la AFV de dicha consulta.

34. El 29 de septiembre de 2022 el Sr. Héctor Orsini Vélez envió un correo electrónico en el cual estaba incluido el Sr. Matos y en el cual se indicó que "[a] solicitud de la gerencia se tramit[ó] una consulta a la Oficina del Contralor de Puerto Rico y a la Oficina del Inspector General, respecto al pago de la factura en cuestión".

35. La querellante hizo la referida consulta a la OIG sin informar a su supervisor ni a la Directora Ejecutiva.

36. El 12 de octubre de 2022, a las 4:12 de la tarde, la OIG remitió un correo electrónico a la querellante mediante el cual se incluyó la respuesta a las consultas que le fueron realizadas. Con relación a la factura del mes de julio del Contrato Interagencial de Arrendamiento, la OIG determinó que no procedía efectuar el pago de la misma. En cuanto al Contrato de Arrendamiento de Servicios de Almacenamiento, la OIG indicó que no procede el pago correspondiente al mes de julio ni al período comprendido del 1 al 29 de agosto. Esto, pues la naturaleza del contrato es de manera prospectiva.

37. El 12 de octubre de 2022, a las 4:36 de la tarde, la OCPR contestó las consultas realizadas por la querellante. En la misma se indicó que, en cuanto a la factura del mes de julio de 2022 del Contrato Interagencial de Arrendamiento, la AFV tiene la obligación de pagar la totalidad de la renta del mes de julio de 2022. Sobre el Contrato de Arrendamiento de Servicios de Almacenamiento, se indicó que la AFV tiene la obligación de pagar los servicios de almacenamientos recibidos del 30 de agosto de 2022 en adelante, para lo cual se tendría que determinar la cuantía diaria prorrateando la cuantía mensual.

38. El 12 de octubre de 2022, a las 5:39 de la tarde, la querellante remitió un correo electrónico al Sr. Matos notificándole que la OCPR había emitido respuesta a ambas consultas e incluyendo copia de las opiniones.

39. Habiendo recibido la opinión de la OCPR, el 13 de octubre de 2022, el Sr. Matos le instruyó a la querellante mediante correo electrónico que, en relación con el desembolso de las facturas en controversia, procediera con la acción que corresponda. Ello de conformidad con la Opinión del Contralor.

40. No es hasta el 14 de octubre de 2022, que la querellante remite copia de la Opinión de la OIG, a pesar de que según informara en su correo electrónico, ésta recibió dicha opinión el 12 de octubre de 2022.

41. El 14 de octubre de 2022, a las 10:04 de la mañana, la querellante le notificó a la alta gerencia de la AFV que se había recibido respuesta de ambas consultas realizadas a las agencias reguladoras y que las mismas eran algo contradictorias en cuanto al pago de la factura correspondiente al mes de julio de 2022 del Contrato Interagencial de Arrendamiento con el BDE. En esa misma fecha, la querellante le remite al Sr. Matos con copia a la Directora Ejecutiva y a otros ejecutivos de la AFV de la opinión de la OIG.

42. La Opinión de la OCPR en respuesta a las consultas realizadas por la AFV fue suscrita por la Contralora Yasmín Valdivieso.

43. El 17 de octubre de 2022, el Sr. Matos suscribió una comunicación dirigida a la querellante mediante la cual se le notificaba que había sido la determinación de la Oficina de la Directora Ejecutiva removerla de su puesto de confianza.

44. Las consultas a la OCPR y a la OIG fueron realizadas por insistencia de la parte querellante.

45. El trámite de presentar consultas sobre contratos gubernamentales, pagos de contratos y de procedimientos auditados o regulados por la OCPR o por la OIG son parte de las funciones inherentes no solo del puesto de Director (a) Ejecutivo (a) Auxiliar, sino de cualquier funcionario ejecutivo de la AFV, y, por tanto, de ser necesarias siempre son recomendadas y/o avaladas por el Sr. Matos como Sub Director Ejecutivo.

46. Las consultas tanto a la OCPR como a la OIG son trámites ordinarios que realiza la AFV cuando surge alguna duda o preocupación en relación con los procesos de contratación y pago de servicios.

El foro primario concluyó que la señora González Rivera no realizó una actividad protegida bajo la Ley Núm. 115-1991, *supra*, ya que su intención no era brindar información y/o testimonio sobre los negocios de su patrono sino resolver una controversia que formaba parte de sus funciones como Directora Ejecutiva Auxiliar. Además, destacó que la apelante ocupaba un puesto de confianza y que por tanto podía ser removida de su puesto en el momento en que su patrono le perdiera la confianza.

Inconforme, la señora González Rivera acudió ante nos en virtud de este recurso de apelación, en el que le imputó al TPI la comisión de los siguientes errores:

**Primer error**: Erró el TPI al resolver que González Rivera no realizó una actividad protegida bajo la Ley Núm. 115-1991 al consultar a la OIG y a la OCPR sobre la legalidad de una transacción que resultó ser ilegal.

**Segundo error**: Erró el TPI al determinar que, por tratarse de una empleada de confianza, la querellante no estaba protegida por la Ley 115-1991, por lo que podía ser removida de su puesto.

**Tercer error**: Erró el TPI al no considerar hechos esenciales que establecen que la alegada pérdida de confianza era un pretexto para justificar una represalia y tampoco considerar la admisión del Sr. Miguel Matos Flores en cuanto a que el

despido ocurrió por la querellante hacer una consulta a la OIG y no por una pérdida general de confianza.

**Cuarto error**: Erró el TPI al no dictar sentencia sumaria a favor de la querellante.

**Quinto error**: En la alternativa, erró el TPI al dictar sentencia sumaria a favor de la parte querellada en un caso donde existen elementos medulares de intención, en lugar de ordenar la celebración de una vista en sus méritos para adjudicar los mismos.

Es su posición que realizar una consulta o someter información a la OCPR o a la OIG es una actividad protegida dado a que la ley no requiere que la consulta inicie o no una investigación formal por lo que ofrecer información en el contexto de una consulta lo convierte en una actividad protegida. Añadió que tal actividad no pierde el carácter de actividad protegida por haberse desempeñado como parte de las funciones de un puesto.

Arguyó que como no se demostró la existencia de una razón que justificara la perdida de confianza de la apelante, correspondía al TPI resolver que fue en represalia por las consultas realizadas. Sostuvo que logró establecer un caso prima facie de despido por represalias por lo que correspondía al patrono el peso de la prueba y que las justificaciones de la AFV son meras excusas que no justificaban el despido. Por último, argumentó que existe controversias de hechos medulares que debieron dar lugar a la celebración de una vista para la adjudicación de estos.

El 26 de marzo de 2025, la AFV presentó un *Alegato de la parte apelada* en la que solicitó que confirmemos la *Sentencia* emitida por el TPI que desestimó con perjuicio la *Querella*. Es su contención que, las consultas generales, sin que haya un acto claro de denuncia, no caen dentro del ámbito de la protección que ofrece la Ley Núm. 115-1991, *supra*, ya que no están destinadas a identificar ni exponer un comportamiento que viole la ley o las normativas éticas. Así, adujo que la apelante no acudió a la OCPR y

a la OIG a modo de ofrecer un testimonio o información sobre la forma en que su patrono lleva a cabo sus negocios, sino a base de una encomienda recibida en el curso ordinario de las operaciones de la AFV. Por eso, sostuvo que la apelante no realizó una actividad protegida.

De otro lado, aludió a que como la apelante era una empleada de confianza y que el retiro de la confianza se realizó a base de la negligencia de esta al no proveerle la información completa a sus supervisores sobre su gestión, no cabe hablar de represalias. La AFV argumentó que el foro primario no erro al dictar sentencia sumaria puesto que la parte apelada presentó una serie de hechos materiales incontrovertidos, apoyados en prueba admisible.

**III.**
**A.**

El mecanismo procesal de la sentencia sumaria surge de la Regla 36.1 de Procedimiento Civil, *supra*, R. 36.1. El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios civiles en los cuales no existe controversia real y sustancial de hechos materiales que no requieren ventilarse en un juicio plenario. *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Bobé et al. v. UBS Financial Services*, 198 DPR 6, 20 (2017); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). Mediante este mecanismo, una parte puede solicitar que el tribunal dicte sentencia sumaria sobre la totalidad de la reclamación o parte de esta. De esta forma, se promueve la descongestión de calendarios, así como la pronta adjudicación de controversias cuando una audiencia formal resulta en una dilación innecesaria. *Vera v. Dr. Bravo*, 161 DPR 308, 331-332 (2004).

Ahora bien, el mecanismo de sentencia sumaria solo está disponible para la disposición de aquellos casos que sean claros; cuando el tribunal tenga ante sí la verdad de todos los hechos

esenciales alegados en la demanda; y que solo reste por disponer las controversias de derecho existentes. ***PFZ Props., Inc. v. Gen. Acc. Ins. Co.***, 136 DPR 881, 911-912 (1994). Asimismo, al evaluarse los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia, consciente en todo momento de que su determinación puede privar a una de las partes de su día en corte. ***León Torres v. Rivera Lebrón,*** 204 DPR 20, 44 (2020). De la mano con este precepto del debido proceso de ley, el juzgador deberá utilizar el principio de liberalidad a favor del opositor de la moción, lo cual implica que, de haber dudas sobre la existencia de controversias de hechos materiales, entonces deberán resolverse a favor de la parte que se opone a la moción de sentencia sumaria. ***Meléndez González et al. v. M. Cuebas***, 193 DPR 100, 138 (2015); ***Ramos Pérez v. Univisión***, 178 DPR 200, 216-217 (2010).

Para prevalecer en una moción de sentencia sumaria, su promovente tiene que establecer su derecho con claridad y debe demostrar que no existe controversia en cuanto a ningún hecho material, o sea, ningún elemento de la causa de acción. ***Meléndez González et al. v. M. Cuebas***, supra, pág. 110. Por hechos materiales se entienden aquellos que pueden afectar el resultado de una reclamación de acuerdo con el derecho sustantivo. ***Ramos Pérez v. Univisión***, supra, pág. 213. La controversia sobre el hecho material debe ser real. Íd. A saber:

> [U]na controversia no es siempre real o sustancial, o genuina. La controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario. La fórmula, debe ser, por lo tanto, que la moción de sentencia sumaria adecuadamente presentada sólo puede negarse si la parte que se opone a ella presenta una oposición basada en hechos que puedan mover a un juez a resolver a su favor. Si el juez se convence de que no existe una posibilidad razonable de que escuchar lo que lee no podrá conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria. Íd., págs. 213-214, *citando a* P. E. Ortiz Álvarez, *Hacia el uso óptimo de la sentencia sumaria*, 3 (Núm. 2) Forum 3, 8 (1987).

En suma, deberá demostrar que: (1) no es necesario celebrar una vista; (2) el demandante no cuenta con evidencia para probar algún hecho sustancial; y (3) procede como cuestión de derecho. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 2017, pág. 317.

En contraste, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia que sea real en cuanto a algún hecho material a la controversia y, en ese sentido, no es cualquier duda la suficiente para derrotar la solicitud. ***Meléndez González et al. v. M. Cuebas***, supra. En efecto, la duda debe ser tal que permita concluir que existe una controversia real y sustancial sobre los hechos materiales. Íd., citando a ***Ramos Pérez v. Univisión,*** supra, pág. 214. De esta manera, central entre las responsabilidades de la parte promovida se encuentra que debe puntualizar los hechos propuestos que pretende controvertir, haciendo referencia a la prueba específica que sostiene su posición. ***León Torres v. Rivera Lebrón,*** supra. Es decir, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa". Íd. De esta forma, no puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa. ***SLG Zapata-Rivera v. JF Montalvo***, supra; ***Ramos Pérez v. Univisión***, supra, pág. 215; ***Cruz Marcano v. Sánchez Tarazona***, 172 DPR 526, 550 (2007). Lo anterior, además, es cónsono con los requerimientos establecidos por las Reglas de Procedimiento Civil, *supra*, en lo pertinente a este mecanismo procesal. Entre estos, la Regla 36.3(b) de Procedimiento Civil, *supra*, R. 36.3(b) dispone:

> (b) La contestación a la moción de sentencia sumaria deberá ser presentada dentro del término de veinte (20) días de su notificación y deberá contener lo siguiente:
> (1) lo indicado en los subincisos (1), (2) y (3) del inciso anterior;

(2) una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(3) una enumeración de los hechos que no están en controversia, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(4) las razones por las cuales no debe ser dictada la sentencia, argumentando el derecho aplicable.

En síntesis, ha quedado establecido que los tribunales no podrán dictar sentencia sumaria en cuatro situaciones: (1) cuando existan hechos materiales y esenciales controvertidos; (2) cuando existan alegaciones afirmativas en la demanda sin refutar; (3) cuando surja de los propios documentos que acompañan la moción en solicitud de sentencia sumaria que existe una controversia sobre algún hecho material o esencial; o (4) cuando no proceda como cuestión de derecho. ***Oriental Bank v. Perapi***, 192 DPR 7, 26-27 (2014).

Entretanto, desde el punto de vista procesal, la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4, impone que, si en virtud de una moción de sentencia sumaria no se dicta sentencia sobre la totalidad del pleito, no se concede todo el remedio solicitado o se deniega la moción, y resulta necesario celebrar un juicio, entonces es obligatorio que el tribunal resuelva la moción realizando una determinación: (1) de los hechos esenciales y pertinentes sobre los que no hay controversia sustancial; (2) de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos; (3) de hasta qué extremo la cuantía de los daños u otra reparación no está en controversia; y (4) ordenando los procedimientos ulteriores que entienda justos, lo cual podría incluir una vista evidenciaria limitada a los asuntos en controversia. En dicho caso, al celebrarse

el juicio se considerarán probados los hechos especificados, se procederá en conformidad y, a base de las determinaciones realizadas en virtud de esta regla, se dictarán los remedios que correspondan, si alguno. Íd.

De otra parte, en *Meléndez González et al. v. M. Cuebas*, supra, el Tribunal Supremo delineó el estándar que el Tribunal de Apelaciones debe utilizar para revisar una denegatoria o una concesión de una moción de sentencia sumaria.

En primer lugar, reafirmó que el Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar solicitudes de sentencia sumaria, siendo su revisión una *de novo* y teniendo la obligación de regirse por la Regla 36 de Procedimiento Civil, *supra,* y los criterios que la jurisprudencia le exige al foro primario. Íd., pág. 118. Asimismo, deberá examinar el expediente de la manera más favorable hacia la parte promovida, llevando a cabo todas las inferencias permisibles a su favor. Íd. Ahora bien, reconoció que el foro apelativo está limitado, toda vez que no podrá tomar en consideración evidencia que las partes no presentaron ante el foro primario, ni podrá adjudicar los hechos materiales en controversia. Íd.

En segundo lugar, prescribió que el Tribunal de Apelaciones deberá revisar que tanto la moción en solicitud de sentencia sumaria, como la oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra.* Íd.

En tercer lugar, mandató que, ante la revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones deberá revisar si en realidad existen hechos materiales en controversia y, de haberlos, estará obligado a exponer específicamente cuáles hechos materiales están en controversia y cuáles no, en cumplimiento con la Regla 36.4 de Procedimiento Civil, *supra,* R. 36.4. Íd.

En cuarto lugar, dispuso que, si encuentra que los hechos materiales realmente no están en controversia, entonces el Tribunal de Apelaciones deberá revisar *de novo* si el foro primario aplicó correctamente el derecho. Íd., pág. 119.

**B.**

En Puerto Rico, cualquier empleado tiene una protección estatutaria contra las represalias que un patrono pueda emprender contra él. La Ley Núm. 115-1991, *supra*, en su artículo 2(a) establece la mencionada protección:

> Ningún patrono podrá despedir, amenazar o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico, así como el testimonio, expresión o información que ofrezca o intente ofrecer, en los procedimientos internos establecidos de la empresa, o ante cualquier empleado o representante en una posición de autoridad, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley. 29 LPRA sec. 194b.[18]

El empleado tiene disponible dos vías para probar su caso. La primera es presentando evidencia directa o circunstancial que demuestre un nexo causal entre la conducta del demandado y el daño sufrido. ***Rivera Menéndez v. Action Service***, 185 DPR 431, 445 (2012). La segunda es presentando, por preponderancia de la prueba, un caso *prima facie* mediante evidencia que demuestre que el empleado: (1) participó en una actividad protegida por la Ley contra Represalias y (2) fue subsiguientemente despedido, amenazado o discriminado en su contra por su patrono (nexo

---

[18] Mediante la Ley Núm. 169-2014 la Asamblea Legislativa de Puerto Rico enmendó el precitado artículo para disponer que los procedimientos internos de las empresas constituyen foros donde aplicará la protección de los trabajadores contra las represalias por ofrecer testimonio, expresión o información. De la exposición de motivos se desprende que la intención de la enmienda fue equiparar nuestra ley local con el Título VII de la Carta de Derechos Civiles de Estados Unidos de 1964 al prohibir a un patrono discriminar contra un empleado que haya presentado una querella, o haya testificado, colaborado o participado en cualquier investigación, procedimiento o vista, o que se haya **opuesto a cualquier práctica ilegal provista por la ley**. 2014 LPR 169 (énfasis suplido). *Véase, además,* Ley de Transformación y Flexibilidad Laboral, Ley Núm. 4-2017, 29 LPRA § 122m (Derechos de los Empleados).

causal). Íd. (citando a **Rentas Santiago v. Autogermana, Inc.**, 182 DPR 759 (2011)). Una actividad protegida, por la Ley Núm. 115-1991, *supra,* es ofrecer o intentar ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante: (1) un foro legislativo, administrativo o judicial en Puerto Rico, (2) en los procedimientos internos establecidos de la empresa, o (3) ante cualquier empleado o representante en una posición de autoridad. 29 LPRA sec. 194b. Como corolario de lo anterior, el Tribunal Supremo de Puerto Rico ha sentado el precedente de que cuando un empleado acude a la Corporación del Fondo del Seguro del Estado para acogerse a sus beneficios, tal proceder constituye una actividad protegida por la Ley Núm. 115-1991, *supra*, pues el Fondo constituye un foro administrativo protegido por el citado estatuto. **Irizarry v. J & J Cons. Prods. Co., Inc.**, 150 DPR 155 (2000). Al interpretar el segundo elemento de temporalidad en los casos *prima facie,* el Tribunal Supremo resolvió que, para que se establezca una inferencia de causalidad, bastará que el empleado pruebe que la acción adversa que experimentó ocurrió al poco tiempo de haber incurrido en la alegada actividad protegida. **Rentas Santiago v. Autogermana, Inc.**, supra, pág. 767. Una vez el empleado demuestre los dos criterios previamente explicados, entonces queda establecido su caso *prima facie* por represalias. Consecuentemente, se activa una presunción *juris tantum* de violación a la Ley Núm. 115-1991, *supra.* Para rebatir esta presunción el patrono estará obligado a comprobar que la acción adversa que tomó contra el empleado estuvo justificada y libre de todo ánimo represivo. Íd., págs. 767–768. Si el patrono logra efectivamente rebatir la presunción, el empleado aún puede prevalecer si prueba que la razón alegada por el patrono es un simple pretexto para una acción adversa represiva. Íd., pág. 768. Sobre esto, el Tribunal Supremo ha hecho la siguiente salvedad:

[U]na vez el patrono logre articular una razón no represiva para la acción adversa que tomó, se requerirá del empleado que, por preponderancia de la prueba, se valga de **factores adicionales** a la proximidad temporal para comprobar que las razones articuladas por el patrono no son más que meros pretextos destinados a ocultar el verdadero ánimo represivo.

***Feliciano Martes v. Sheraton***, 182 DPR 368, 400 (Énfasis nuestro).

Es decir, si el patrono logra derrotar el caso *prima facie* del empleado, ya sea estableciendo la ausencia de nexo causal o la inexistencia de actividad protegida, entonces la carga probatoria aumenta para el empleado, pues ya no bastaría el elemento temporal que pueda catalogarse como de poco tiempo. Los factores adicionales, que debe probar el empleado, según el Tribunal Supremo, son: (1) que el empleado fue tratado de forma distinta a otros empleados; (2) que existió un patrón de conducta antagónica en su contra; (3) que las razones articuladas por el patrono para fundamentar su acción adversa están plagadas de incongruencias, o (4) cualquier otra evidencia que obre en el expediente para establecer el elemento del nexo causal. ***Feliciano Martes v. Sheraton***, supra, en la pág. 400.

### C.

En nuestro ordenamiento jurídico, la contratación de empleados públicos se rige por el principio de mérito. Es decir, que un empleado es seleccionado, adiestrado, ascendido y retenido en su empleo en consideración únicamente a sus capacidades y mérito. De otro lado, los empleados de confianza son tanto de libre selección, como de libre remoción.

Por consiguiente, distinto al empleado de carrera, que ocupa su cargo en cumplimiento del principio de mérito y tiene un interés propietario en el desempeño permanente de su cargo, el empleado de confianza ocupa su posición a la entera discreción de la autoridad nominadora. ***Matías v. Mun. de Lares***, 150 DPR 546, 551-552 (2000). No obstante, el ejercicio de tal discreción no significa que un

empleado de confianza no pueda cuestionar nunca su despido, toda vez que existen situaciones en las que puede impugnarse la cesantía, por ejemplo, cuando la causa del despido del empleado de confianza es el discrimen político. ***Ramos Villanueva v. Sec. de Comercio***, 112 DPR 514, 519 (1982). También podría existir alguna reclamación sobre el procedimiento seguido por la autoridad nominadora para el despido. En estas situaciones el empleado de confianza puede acudir al foro judicial a solicitar la revisión de la determinación de la autoridad nominadora que le afecta directamente.

El Tribunal Supremo expresó que la libre selección y remoción de los empleados de confianza responde a "una sana, correcta y bien establecida norma en todos los sistemas científicos de administración de personal en cuanto a los cargos de confianza se refiere". ***Díaz González v. Tribunal Superior***, 102 DPR 195, 197 (1974).

**IV.**

En el caso de marras debemos determinar si procedía declarar Ha Lugar la *Moción de Sentencia Sumaria* presentada por la parte apelada y, en consecuencia, desestimar con perjuicio la *Querella*.

Inconforme, la señora González Rivera planteó que el foro primario erró al dictar la *Sentencia* recurrida desestimando la reclamación de epígrafe en su totalidad cuando, según expuso, existen controversias sobre la causa de su despido.

Tras un análisis objetivo, sereno y cuidadoso del expediente, en correcta práctica apelativa adjudicativa, resulta forzoso concluir que el TPI no incidió en los errores señalados.

Según ***Meléndez González et al. v. M. Cuebas***, supra, el primer paso del estándar de revisión de las solicitudes de sentencia sumaria es revisar el expediente *de novo* de la forma más favorable

para la parte que se opuso a la solicitud de sentencia sumaria, y aplicar los mismos criterios de la Regla 36 de Procedimiento Civil, *supra*. De igual modo, el segundo pilar exige que revisemos que tanto la petición de sentencia sumaria como su oposición cumplan con los requisitos de la Regla 36 de Procedimiento Civil, *supra*. ***Meléndez González et al. v. M. Cuebas***, supra, pág. 118. De un pormenorizado estudio del voluminoso expediente, determinamos que tanto la *Moción de Sentencia Sumaria* como su oposición, cumplieron con los requisitos de la Regla 36 de Procedimiento Civil, *supra*. Por lo tanto, corresponde continuar al tercer criterio del aludido estándar de revisión apelativa sobre las solicitudes de sentencia sumaria.

El tercer paso conlleva revisar si en realidad existen hechos materiales en controversia. De haberlos, debemos cumplir con la exigencia establecida en la Regla 36.4 de Procedimiento Civil, *supra*, y exponer cuáles son los hechos materiales que están en controversia y cuáles son incontrovertidos. Luego una revisión exhaustiva del expediente, resolvemos que no existen hechos en controversia.

No existiendo hechos en controversia, pasamos al cuarto y último eslabón; este es, debemos revisar de *novo* si el TPI aplicó correctamente el derecho. ***Meléndez González et al. v. M. Cuebas***, supra, pág. 119.

En particular, debemos resolver si la señora González Rivera participó de una actividad protegida por la Ley Núm. 115-1991, *supra*. De haber participado, fue subsiguientemente despedida en un acto de represalias.

Para así hacerlo, la apelante debió demostrar primeramente que ofreció o intentó ofrecer, verbalmente o por escrito, un testimonio, expresión o información ante un foro legislativo, administrativo o judicial, en algún procedimiento interno de la

empresa, o ante cualquier empleado o representante en una posición de autoridad. De los hechos determinados como incontrovertidos por el foro primario surge que la apelante, como parte de las funciones de su puesto, recomendó a la AFV realizar una consulta a la OCPR, con relación al pago de unas facturas sobre unos contratos otorgados por la parte apelada. Tras eso, su supervisor inmediato, el señor Matos Flores —Sub Director Ejecutivo—, le recomendó realizar las consultas a la OCPR. No obstante, la apelante realizó la referida consulta a la OCPR pero también a la OIG.

Además, en el caso de marras, el foro primario estableció como un hecho incontrovertido que la señora González Rivera ocupaba un puesto de confianza como Directora Ejecutiva Auxiliar y que la apelante conocía que en el momento en que su supervisor inmediato o la Directora Ejecutiva, le removieran la confianza porque entendiesen que no estaba haciendo sus labores conforme a la política pública de la Agencia, éstos tenían la facultad, sin más, para removerla de su puesto.

También se desprende del expediente que la apelante recibió la opinión de la OCPR el 13 de octubre de 2022 y en esa fecha la remitió al Sub Director Ejecutivo. No obstante, cuando el señor Matos Flores le instruyó a que procediera con la acción correspondiente en virtud de la opinión de la OCPR, el 14 de octubre de 2022, la apelante remitió la opinión de la OIG a pesar de que la recibió el 12 de octubre de 2022. Posteriormente, ésta fue notificada de la determinación de su despido. Así, surge de los hechos incontrovertidos que la apelante fue despedida porque la Oficina de la Directora Ejecutiva de la AFV le retiró la confianza. Todo lo anterior quedó establecido por los documentos que acompañaron la *Moción de sentencia sumaria.*

Conforme a la normativa jurídica pormenorizada precedentemente, los empleados de confianza podrán ser destituidos o despedidos, sin mayor expresión o razón que la pérdida de confianza de la autoridad nominadora, del patrono. Pues, a no ser por razones inconstitucionales, estos no gozan de un interés propietario sobre su trabajo.

De otra parte, el lenguaje de la Ley Núm. 115-1991, *supra*, es claro al disponer que la actividad protegida son aquellas expresiones que haga o intente hacer el empelado en el contexto de una investigación o procedimientos internos de la empresa. Ciertamente, hacer una consulta con la intención de aclarar una duda no está cobijada por la protección de la precitada Ley.

Aunque existe un elemento temporal de poco tiempo entre la reunión con la apelante y el despido, la AFV logró demostrar, con prueba admisible, que la señora González Rivera ocupaba un puesto de confianza y perdió la misma al no informar de antemano que hizo una consulta a la OIG cuando la instrucción fue consultar a al OCPR. El patrono logró efectivamente derrotar la presunción del nexo causal al probar que el empleo de la apelante era de libre selección y remoción y ésta lo conocía.

De un examen sosegado del expediente se desprende diáfanamente que la señora González Rivera no logró establecer que llevó a cabo una actividad protegida por la Ley Núm. 115-1991, *supra*, y que por dicha actividad fue despedida. Conforme a la normativa antes expuesta, sus alegaciones son insuficientes para sustentar su derecho a reclamar represalias. Esto es porque las consultas a la OIG y OCPR en virtud de sus funciones como Directora Ejecutiva Auxiliar del Área Fiscal por la apelante para presentar su querella por represalias no constituyen una actividad protegida por la Ley Núm. 115-1991, supra, sino precisamente parte

de las funciones de su puesto. Siendo así, no se cometieron ninguno de los errores señalados.

Por todo lo anterior, corresponde confirmar la *Sentencia* apelada, toda vez que los hechos formulados como incontrovertidos por el TPI, se sostienen por la prueba que obra en el expediente, validan la conclusión de que la *Querella* promovida por la señora González Rivera no procede en derecho.

**V.**

Por los fundamentos expuestos, se *confirma* la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones