Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| MILDRED I. ELÍAS DÍAZ<br><br>Apelante<br><br>V.<br><br>DEPARTAMENTO DE LA VIVIENDA; ADMINISTRACIÓN DE LA VIVIENDA PÚBLICA; ESTADO LIBRE ASOCIADO DE PUERTO RICO<br><br>Apelados | KLAN202500377 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2023CV00779<br><br>Sobre: Ley 100 de 30 de junio de 1959; Ley 69 de 6 de julio de 1985; Ley 115 de 20 de diciembre de 1991 |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez.

Marrero Guerrero, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 25 de junio de 2025.

Comparece la señora Mildred I. Elías Díaz (señora Elías Díaz o apelante) en solicitud de que revisemos una *Sentencia* emitida el 28 de febrero de 2025 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI).[1] En el referido dictamen, el TPI declaró Ha Lugar la *Moción de Sentencia Sumaria* que presentó el Estado Libre Asociado de Puerto Rico ( ELA o apelado). En consecuencia, el Foro Primario desestimó la reclamación de la señora Elías Díaz al amparo de la *Ley Antidiscrimen de Puerto Rico,*[2] la *Ley para Garantizar la Igualdad de Derecho al Empleo,*[3] y la *Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial.*[4] Ello, al concluir que la Administración de la Vivienda Pública (AVP) no cometió un acto perjudicial, injustificado y discriminatorio contra la apelante por ser mujer ni empleó un trato desigual.

---

[1] Apéndice de *Apelación*, págs. 1087-1103. Archivada y notificada el 4 de marzo de 2025.
[2] Ley Núm. 100 de 30 junio de 1959 según enmendada 29 LPRA sec. 146 *et seq.*
[3] Ley Núm. 69 de julio de 1985 según enmendada, 29 LPRA sec. 1321 *et seq.*
[4] Ley Núm. 115 - 1991 según enmendada, 29 LPRA sec. 194 *et seq.*

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

**I.**

Este caso se originó el 27 de enero de 2023, fecha en que la señora Elías Díaz presentó una *Querella* contra el Departamento de la Vivienda de Puerto Rico (DVPR), la AVP y el ELA por discrimen y represalias.[5] En esta, alegó que veinte (20) años atrás, la agencia la contrató por tiempo indeterminado como contador principal de Cuentas por Cobrar. No obstante, precisó que el 15 de septiembre de 2025, se le notificó que su posición se le cedió al señor Claudio Ferrer Jr., un empleado nuevo, más joven y con menor preparación académica y experiencia. Indicó que la agencia la degradó de posición a contador principal de Sistema de Información, sin recibir notificación, justificación para el referido cambio, entrenamiento, ni descripción clara de sus deberes y responsabilidades. Adujo que lo anterior se debió a discriminación por su edad y género y represalias por presentar unas querellas que la agencia nunca atendió. Ante ello, solicitó la restitución de su puesto como contador principal de Cuentas por Cobrar, la revisión y el ajuste de su sueldo y una compensación por daños y angustias mentales por una cantidad no menor de $100,000.00.

Posteriormente, el 28 de junio de 2023, el ELA presentó una *Contestación a Querella*.[6] En su escrito, negó la existencia de acciones discriminatorias y represalias en contra de la señora Elías Díaz. Alegó que la apelante comenzó a trabajar en un puesto transitorio como Analista de Presupuesto en el Área de Operaciones del Negociado de Administración hasta que el 26 de junio de 2002, se le nombró a un puesto regular de contador principal en el Negociado de Contabilidad

---

[5] Apéndice de *Apelación*, págs. 1-9.
[6] *Íd.*, págs. 10-20.

de la División de Sistemas de Información con permanencia efectiva al 25 de junio de 2023.

Arguyó que, en virtud de la *Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico*, Ley Núm. 8-2017, según enmendada, 3 LPRA sec. 1469a, se actualizaron las descripciones del puesto de la apelante. Planteó que la agencia dejó sin efecto el destaque de la señora Elías Díaz como contador principal en el Área de Cuentas por Pagar por necesidad de servicio, ya que la vacante se cubrió con el señor Claudio Ferrer, Jr., quien tenía una puntuación preferente por ser un veterano. Sin embargo, expuso que a la apelante se le ofreció la alternativa de ser ubicada en la División de Reconciliaciones Bancarias o en la División de Activos Fijos, siendo esta última la seleccionada. El ELA manifestó que la agencia no degradó el puesto de la señora Elías Díaz, ya que la mantuvo en la misma clasificación y le aumentó el sueldo. Puntualizó que existían empleados a quienes se les honró su sueldo en la extinta Corporación de Renovación Urbana y Vivienda (CRUV), el cual era superior a la escala mínima de contador principal en el Plan de Clasificación y Retribución.

Por otro lado, el apelado sostuvo que la señora Elías Díaz no tenía una causa de acción al amparo de la *Ley Antidiscrimen de Puerto Rico*, *supra*, en vista de que dicho estatuto no era aplicable al Estado. Además, alegó que la agencia no discriminó en contra de la apelante ni tomó represalias en su contra.

Subsiguientemente, el 11 de octubre de 2024, el ELA presentó una *Moción de Sentencia Sumaria*[7]. En esta expuso que no existía controversia sobre los hechos materiales del caso, excepto con las siguientes controversias de derecho que el TPI debía resolver:

A. Que no cuenta con jurisdicción para dirimir si las transacciones de personal impugnadas por la demandante fueron hechas conforme a derecho.

---

[7] *Íd.*, págs. 21-376.

B. Que las controversias relacionadas a[l] alegado discrimen por género y edad, así como la controversia relacionada a [alegadas] represalias deben evaluarse aplicando la presunción de corrección de las transacciones de personal de conformidad con las Reglas de Evidencia.

C. Que el Departamento de la Vivienda asignó los sueldos de los funcionarios y funcionarias acorde con la normativa vigente, sin ánimo de discriminar con la demandante por razón de género.

D. Que el Departamento de la Vivienda completó el proceso de reclutamiento del Sr. Claudio Ferrer Jr., de conformidad con la normativa aplicable, sin ánimo de discriminar en contra de la demandante por razón de género o edad.

E. Que el Departamento de la Vivienda no ha tomado represalias en contra de la demandante por querellas presentadas en el pasado, o por querellas presentadas con posterioridad a haberse iniciado el proceso de reclutamiento mediante el cual se nombró [al] Sr. Claudio Ferrer Jr.

En síntesis, subrayó que este caso debía litigarse en primera instancia en la Comisión Apelativa del Servicio Público, toda vez que la señora Elías Díaz presentó una reclamación a la luz de los términos y las condiciones de su empleo. De otra parte, planteó que el Foro Primario no podía emitir una determinación con respecto a la causa de acción por represalias, ya que la agencia no tomó una determinación adversa en contra de la apelante por participar en una actividad protegida. En lo atinente a la causa de acción por discrimen, el ELA reiteró que la *Ley Antidiscrimen de Puerto Rico, supra,* era inaplicable a este caso por la agencia no operar como negocio o empresa privada.

En respuesta de lo anterior, el 11 de diciembre de 2024, la señora Elías Díaz presentó una *Moción en Oposición a Sentencia Sumaria (SUMAC 46) y Solicitud de Sentencia Sumaria a favor de la Parte Querellante.*[8] En esta, aseveró que el TPI no debía emitir una sentencia sumaria a favor del apelado, ya que presentó hechos esenciales y materiales que apoyaban la sentencia sumaria a su favor al ser despojada de su puesto de manera arbitraria, caprichosa y

---

[8] *Íd.,* págs. 377-1047.

pretextual por un hombre sustancialmente menor. La apelante esbozó que los siguientes asuntos estaban en controversia:

A. Si la Sra. Elías participó en una acción protegida por la Ley Núm. 115 de 20 de diciembre de 1991, "*Ley de Represalias contra el Empleado por Ofrecer Testimonio*" al ofrecer o intentar ofrecer, verbalmente y por escrito, testimonio, expresiones e información en los procedimientos internos establecidos de la AVP, o ante cualquier empleado o representante en una posición de autoridad, y por dicha acción fue sometida a un patrón de trato desigual, amenazada y discriminada con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo.

   a. Las acciones protegidas fueron las siguientes:

      i. La Sra. Elías presentó Querella fechada 28 de julio de 2017, y recibida el 1ro de agosto de 2017, en la Oficina del Secretario Auxiliar de Recursos Humanos de la AVP, por trato desigual a base de género.

      ii. Querella presentada en enero de 2017 con relación a una hoja de asistencia del empleado Alejandro Berdecía, a quien la Sra. Elías supervisaba, y la Sra. Cynthia Negrón autorizó como si el empleado hubiese laborado cuando estuvo ausente.

      Estas querellas fueron presentadas en Recursos Humanos mientras la Sra. Itzel Aguiar Pérez fungía como Secretaria Auxiliar de Recursos Humanos de la AVP, pero nunca fueron atendidas y la AVP comenzó un patrón de trato desigual hacia la Sra. Elías ignorando sus propios protocolos y reglamentos.

      En el 2019, la Lcda. Lisneida Nieves Martínez entró a la AVP como Secretaria Auxiliar de Recursos Humanos y ha ocupado el puesto hasta el presente. […]

      Las acciones protegidas presentadas ante Recursos Humanos bajo la Lcda. Lisneida Nieves Martínez fueron las siguientes:

      iii. El 21 de diciembre de 2021, la Sra. Elías envió un correo electrónico a la Lcda. Lisneida Nieves Martínez reiterando su reclamo sobre [la] Querella de Alejandro Berdecía. […]

      iv. El 22 de diciembre de 2021, la Sra. Mildred Elías envió un correo electrónico a Cynthia Negrón Matos y copia a Edna Rivera, la Administradora Asociada del Área de Finanzas y Administración, en el que expresó que " [e]l señor Berdecía ;amenazó con agredirme; realicé una querella y nunca recibí respuesta. Además denuncié que usted le firmó ajustes como estaba presente cuando en realidad no estaba. Esta situación me produce angustia, esto es acoso." […]

      v. El 29 de junio de 2022, la Sra. Elías presentó denuncias sobre patrón de trato desigual y represalia de parte de su supervisora, la Sra. Cynthia Negrón, en un correo electrónico dirigido a

Lisneida Nieves Martínez con copia a Edna A. Rivera Vargas y Cynthia Negrón Matos. [...]

    b. El patrón desigual y la amenaza y discrimen con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo fueron las siguientes:

        i. Las Querellas presentadas por la Sra. Elías sobre trato desigual a base de género y denunciando irregularidades fueron ignoradas y no atendidas conforme a los protocolos y reglamentos de la AVP estableciendo así un patrón de trato desigual;

        ii. El 15 de septiembre de 2022, la supervisora de la Sra. Elías, Sra. Cynthia Negrón y la Administradora Asociada de Finanzas y Administración, Edna Rivera, le notificaron que la plaza de Contador Principal de Cuentas por Pagar, que la Querellante ocupaba desde su nombramiento en el 2002, había sido convocada y se nombró un nuevo contador Principal de Cuentas por Pagar. Que la reemplazaría [...]

        iii. La Sra. Elías se encuentra esperando que le den su hoja de deberes y cuáles son las funciones que debe ejercer. [...] No le han entregado ni le han dicho cuáles son los requisitos de puesto, ni el desglose de las tareas que deberá hacer. Lo ha solicitado y no se lo han dado. [...]

La señora Elías Díaz precisó que en este caso era aplicable la por la *Ley Antidiscrimen en el Empleo, supra,* en vista de que la agencia lo utilizó como parte de la base legal del *Protocolo sobre el Sistema Interno de Querellas de Discrimen por Género en el Empleo.* Asimismo, indicó que aun cuando la AVP estableció un sistema interno para el trámite de consultas y querellas sobre discrimen por género en el empleo; ello no impedía que se presentaran querellas en otros foros. Indicó que, en este caso, la acción administrativa era una gestión inútil, inefectiva y no ofrecía un remedio adecuado, ya que era la tercera ocasión en que sus reclamaciones administrativas eran ignoradas. A su vez, especificó que estableció su causa de acción por represalia al ser tratada de forma distinta a otros empleados; existir un patrón de conducta antagónica en su contra y porque las razones brindadas por la AVP fundamentar estaban plagadas de incongruencias.

El 7 de enero de 2025, el ELA presentó una *Réplica a "Moción en oposición a sentencia sumaria y solicitud de sentencia sumaria a favor de la parte querellante".*[9] En la misma, reiteró que, en tal etapa de los procedimientos, las únicas controversias que el Foro *a quo* debía atender eran las siguientes:

A. Que la diferencia de sueldo entre empleados y empleadas que ocupan la misma posición que la demandante se encuentra justificados (sic) conforme a la ley y reglamentos aplicables, y no es resultado de un patrón de discrimen en contra de la demandante por razón de su edad y/o género.

B. Que este Honorable Tribunal no cuenta con jurisdicción para dirimir si el salario asignado a la demandante, el proceso de reclutamiento del Sr. Claudio Ferrer o la reubicación de la demandante a la División de Sistemas de Información fueron conforme al derecho aplicable, por tratarse de una materia reservada exclusivamente para el foro administrativo[.]

C. Que, como consecuencia de la falta de jurisdicción antes mencionada, las controversias relacionadas a[l] alegado discrimen por género y edad, así como la controversia relacionada a alega[das] represalias deben evaluarse partiendo de la premisa que el salario de los empleados, el reclutamiento de nuevo personal y la reubicación de [la] demandante a la División de Sistemas de Información fueron hechas conforme a derecho, de conformidad con la presunción de corrección que establece la Regla de Evidencia.

D. Que el Departamento de la Vivienda no reubicó a la demandante como un acto de represalia, como consecuencia de una querella presentada cinco años previo a que se le notificara su reubicación en la División de Sistemas de Información o una querella presentada meses después que se comenzara el proceso de reclutamiento para la posición asignada a la División de Cuentas por Pagar.

El apelado se sostuvo en que no se evidenció que la señora Elías Díaz fue discriminada por razón de género o edad. Además, planteó que la diferencia de sueldo entre empleados se sustentó por el principio de mérito. Por otra parte, aludió que la querella administrativa que la apelante presentó era remota a su reubicación en la División de Sistemas de Información y al reclutamiento para la posición que ocupaba en la División de Cuentas por Pagar.

---

[9] *Íd.*, págs. 1048-1085.

Sometido el asunto ante su consideración, el 28 de febrero de 2025, el TPI emitió su *Sentencia*[10]. En esta, formuló las siguientes determinaciones de hechos:

1. Mildred Elías Díaz (Elías Díaz) nació el 16 de junio de 1966. Actualmente tiene 58 años.

2. Elías Díaz tiene un bachillerato en Administración de Empresas y una maestría en Contabilidad.

3. En el 2002, la demandante Elías Díaz solicitó la posición de contador principal en la División de Sistemas de Información en el Área de Finanzas y Administración del Departamento de la Vivienda, para la cual fue entrevistada por Carlos López Rivera, director administrativo del Área de Finanzas, y Brunilda Santiago, directora de Contabilidad del Negociado de Contabilidad, Área de Finanzas y Administración.

4. Elías Díaz fue contratada y ubicada como contadora principal en la División de Cuentas a Cobrar, posición que Olga Sánchez dejó vacante, luego de que recibiera un destaque para trabajar en el Departamento de Recursos Naturales y Ambientales.

5. El 26 de junio de 2002, Elías Díaz fue nombrada contadora principal, en el puesto número 10640111, en el Área de Finanzas y Administración, Negociado de Contabilidad, en la Administración de la Vivienda Pública.

6. Durante ese periodo, Cynthia Negrón Matos fungía como supervisora inmediata de Elías Díaz en la División de Cuentas a Cobrar o Pre-intervención.

7. Desde el 26 de junio de 2002 hasta el 3 de abril de 2009, Elías Díaz ocupó el puesto de contador principal en el Área de Finanzas y Administración, Negociado de Contabilidad (Reintervención-Cuentas a Cobrar).

8. El 3 de abril de 2009, Elías Díaz pasó a prestar servicios en la Secretaría Auxiliar para Asuntos Legales del Departamento de la Vivienda, mediante un destaque.

9. Dicho destaque fue solicitado por Carlos López Rivera, con el fin de evitar un conflicto de intereses, tras comenzar una relación con Elías Díaz.

10. El 26 de octubre de 2010, la Lcda. Ada I. Casiano-Figueroa, asesora legal de la Administración de la Vivienda Pública, solicitó al Lcdo. Lizardo Mattei, director de Recursos Humanos, la terminación del destaque de Elías Díaz y la reinstalación en su puesto de carrera de contador principal en la Administración de la Vivienda Pública.

---

[10] *Íd.,* págs. 1087-1104. Archivada y notificada el 4 de marzo de 2025.

11. El 28 de octubre de 2010, Elías Díaz fue notificada, mediante carta, sobre la terminación de su destaque administrativo en la Secretaría Auxiliar para Asuntos Legales del Departamento de la Vivienda e instruida a regresar a su lugar oficial de trabajo en el Área de Finanzas y Administración, efectivo el 1 de noviembre de 2010.

12. Elías Díaz fue reasignada a la División de Cuentas a Cobrar por Edna Rivera Vargas, directora asociada del Área de Finanzas de la Administración de la Vivienda Pública.

13. Elías Díaz regresó como contadora principal a Cuentas a Cobrar, Área de Preintervención, nuevamente como supervisora, donde estuvo laborando hasta septiembre de 2021.

14. El 1 de agosto de 2017, Elías Díaz presentó una carta, con fecha del 28 de julio de 2017, dirigida a la secretaria auxiliar de Recursos Humanos, Lcda. Itzel Aguilar Pérez, y a la administradora asociada del Área de Finanzas y Administración, Edna Rivera Vargas, en la que indica conocer que hay contadores principales varones con remuneraciones más altas a su escala salarial y solicita una remuneración igualitaria, conforme la Ley Núm. 16-2017, supra.

15. El 7 de junio de 2018, Elías Díaz y su supervisora inmediata, Cynthia N. Negrón Matos, suscribieron un documento intitulado "Descripción del puesto", el cual describe las funciones laborales de Elías Díaz y especifica que esta ocupa el puesto número 10640111, clasificado como contador principal en la División de Sistemas de Información del Negociado de Contabilidad, Área de Finanzas y Administración.

16. El 21 de junio de 2018, Elías Díaz envió un correo electrónico de seguimiento, dirigido a la Lcda. Itzel Aguilar Pérez, sobre su solicitud del 1 de agosto de 2017, relacionada con la Ley Núm. 16-2017, supra, de la cual no había recibido respuesta.

17. El 5 de julio de 2018, la Lcda. Itzel Aguilar Pérez citó a Elías Díaz a una reunión para discutir sus alegaciones sobre el presunto incumplimiento con la Ley Núm. 16-2017, supra.

18. El 28 de febrero de 2022, la administradora asociada del Área de Finanzas y Administración, Edna Rivera Vargas, solicitó al administrador y a la secretaria auxiliar de Recursos Humanos que, por necesidad en el servicio, comenzaran un proceso de reclutamiento para llenar plazas vacantes en su área. Entre los puestos vacantes por los cuales se solicitó una convocatoria se encuentra el puesto número 10640086, clasificado como contador principal, asignado a la División de Cuentas a Cobrar.

19. El Departamento de la Vivienda publicó la convocatoria número AV14-21-22, abierta desde el 11 de mayo de 2022 hasta el 24 de mayo de 2022, mediante la cual se comenzó el proceso de reclutamiento para dos plazas de contador principal.

20. El 29 de junio de 2022, Elías Díaz envió un correo electrónico a Lisneida Nieves Martínez, con copia a Edna Rivera Vargas y Cynthia Negrón Matos, titulado "RE: TRABAJO OVERTIME Y ACOSO", en el que hace un listado de incidentes ocurridos con su supervisora inmediata, la directora de Contabilidad, Cynthia Negrón Matos, y solicita intervención de la secretaria auxiliar de Recursos Humanos.

21. El 21 de septiembre de 2022, Elías Díaz envió un correo electrónico titulado "NOTIFICACIÓN CAMBIO", en el que hace un recuento de la reunión llevada a cabo el 15 de septiembre de 2022 con la administradora asociada de Finanzas, Edna Rivera Vargas, y la directora de Contabilidad, Cynthia Negrón Matos, donde le indicaron que se nombró un nuevo contador partidor para la División de Cuentas a Cobrar y que ella sería reubicada al área donde originalmente fue asignada, esto es, la División de Sistemas de Información.

22. Tras el reclutamiento de Claudio Ferrer, Jr. como contador principal en la División de Cuentas a Cobrar, Elías Díaz fue reubicada en la División de Activos Fijos en el Negociado de Contabilidad.

23. El 19 de diciembre de 2022, Elías Díaz, por conducto de su abogada, presentó una querella ante la Oficina del Secretario y la Secretaría Auxiliar de Recursos Humanos, en la que solicitó que se le reubique en la División de Cuentas a Cobrar y se le compense no menos de $100,000.00 por los alegados daños sufridos.

24. El 23 de junio de 2023, la Secretaria Auxiliar Interina de Recursos Humanos certificó que, conforme el Plan de Clasificación y Retribución para el Servicio de Carrera del Gobierno, el cual entró en vigor el 1 de enero de 2023, la clase de Contador Principal quedó ubicada en la escala número 16 con un salario mínimo asignado de $5,408.33 y, consecuentemente, a todos los empleados se les realizó un ajuste en salario para ubicarlos en el mínimo de la escala de Contador Principal.

El TPI consignó que la *Ley Antidiscrimen en el Empleo, supra,* no era aplicable a los hechos de este caso, por lo que desestimó con perjuicio la causa de acción de discrimen al amparo del referido estatuto. A su vez, estableció que la señora Elías Díaz carecía de una causa de acción de discrimen por razón de sexo, al entender que la

AVP no cometió un acto perjudicial, injustificado y discriminatorio en contra de la apelante por ser mujer. El Foro Primario expresó que la diferencia salarial con otros empleados de igual puesto se aumentó y equiparó, de conformidad con el Plan de Clasificación y Retribución para el Servicio de Carrera del Gobierno. Igualmente, dispuso que el ELA probó que el cambio de la apelante de la División de Cuentas por Pagar a su lugar de empleo habitual en la División de Sistemas de Información se debió al cese de una necesidad de servicio al contratarse al señor Claudio Ferrer, Jr. Cónsono con lo anterior, dispuso que el ELA demostró satisfactoriamente que medió justa causa para la reubicación de la señora Elías Díaz.

En lo que concierne a la causal de represalias, el TPI puntualizó que la apelante debía presentar evidencia adicional que hiciera constar el nexo causal entre la actividad protegida y la acción adversa tomada por la agencia. Indicó que la señora Elías Díaz no evidenció que su patrono empleó un trato desigual, un patrón de conducta antagónica, inconsistencias en sus argumentos o cualquiera otra evidencia que estableciera el elemento de nexo causal.

Por lo anterior, el Foro apelado concluyó que procedía declarar Con Lugar la *Moción de Sentencia Sumaria* del ELA y desestimar la *Demanda* de epígrafe. A su vez, declaró No Ha Lugar a la *Moción en Oposición a Sentencia Sumaria y Solicitud de Sentencia Sumaria a favor de la Parte Querellante*.

Ante su inconformidad, el 2 de mayo de 2025, la señora Elías Díaz presentó el recurso de apelación que nos ocupa, en el que le atribuyó al Foro Primario la comisión de los siguientes errores:

> **PRIMER ERROR**: ERRÓ EL TPI AL NO DETERMINAR QUE LA MOCIÓN DE SENTENCIA SUMARIA PRESENTADA POR VIVIENDA NO CUMPLÍA CON LOS REQUISITOS DE FORMA CODIFICADOS EN LA REGLA 36 DE PROCEDIMIENTO CIVIL, *SUPRA*, Y LA JURISPRUDENCIA APLICABLE, Y QUE PROCEDÍA DECLARARLA NO HA LUGAR.

> **SEGUNDO ERROR**: ERRÓ EL TPI AL "CREAR" SUS PROPIOS HECHOS INCONTROVERTIDOS EN LOS QUE APOYÓ SU

FALLO A FAVOR DE LA MOCIÓN DE DESESTIMACIÓN DE VIVIENDA.

**TERCER ERROR**: ERRÓ EL TPI AL CONCLUIR QUE LA SRA. ELÍAS NO TIENE DERECHO A REMEDIO ALGUNO CONFORME AL DERECHO APLICABLE BAJO LA LEY NÚM. 100-1959, LA CONSTITUCIÓN DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO Y/O EL TÍTULO VII DE LA LEY FEDERAL DE DERECHOS CIVILES DE 1964, LA LEY NÚM. 69, *SUPRA*[,] Y LA LEY 90-2020, A PESAR DE HABER ESTABLECIDO QUE SUFRIÓ UN ACTO PERJUDICIAL Y DISCRIMINATORIO AL SER INJUSTIFICADAMENTE DESPOJADA DE SU PUESTO POR UN CABALLERO MENOR EN EDAD, PREPARACIÓN ACADÉMICA Y EXPERIENCIA.

**CUARTO ERROR**: ERRÓ EL TPI AL CONCLUIR QUE LA SRA. ELÍAS NO ESTABLECIÓ LOS HECHOS MATERIALES Y ESENCIALES PARA APOYAR SU CAUSA DE ACCIÓN DE REPRESALIA.

En esencia, la apelante alegó que el Foro Primario no discutió el hecho de que toda vez que la agencia adoptó el *Protocolo sobre el Sistema Interno de Querellas de Discrimen por Género en el Empleo*, voluntariamente asumió la responsabilidad por la conducta ilegal de discrimen por género en el empleo a tenor con la *Ley Antidiscrimen en el Empleo, supra*. A su vez, arguyó que el TPI no formuló una determinación de hecho que estableciera que la agencia no operaba como negocio o empresa privada. Sin embargo, la señora Elías Díaz concibió que la agencia decidió actuar como un negocio privado al extender la protección del referido estatuto a sus empleados.

Asimismo, adujo que su remoción como contador principal del Departamento de Cuentas por Pagar y posterior traslado fue injustificado, ya que no solicitó el referido cambio, no se le notificó sobre su derecho a apelar la decisión del traslado, ni se le informó las funciones de su nuevo puesto, en contravención con el Reglamento de Personal para los Empleados de Carrera de la Administración de Vivienda Pública, Reglamento Núm. 6189 del Departamento de Estado, 28 de agosto de 2000. Indicó que el Foro apelado erró al concluir que se necesitaban contadores principales adicionales para cubrir el puesto que la apelante ocupaba. Igualmente, planteó que el TPI erró al establecer que la señora Elías Díaz fue devuelta a su lugar habitual de empleo en la División de Sistemas de Información cuando

el único puesto que ocupó por los pasados veinte (20) años era en Cuentas por Pagar.

La señora Elías Díaz esgrimió que el TPI erró al crear nuevos hechos incontrovertidos que el ELA no presentó. Puntualizó que lo anterior vulneró su derecho a un debido proceso de ley y le coartó su día en corte.

Por último, manifestó que el Foro Primario incidió al disponer que la apelante no estableció hechos materiales y esenciales para apoyar su causa de acción de represalias. Ello, al entender que presentó evidencia que estableció que fue tratada de forma distinta a otros empleados; que existió un patrón de conducta antagónica en su contra; que las razones articuladas por la AVP para justificar su despojo fueron pretextuales, inverosímiles y falsas.

Por otra parte, el 2 de junio de 2025, el apelado, representado por la Oficina del Procurador General de Puerto Rico (OPG), presentó su *Alegato en Oposición.* En esta, argumentó que estableció la inexistencia de una controversia sustancial de hechos esenciales y pertinentes mediante prueba admisible, por lo que el Foro *a quo* dictó sentencia a su favor. Adujo que la apelante no logró citar la regla en la que apoyó su alegación de que el TPI no podía hacer sus propias determinaciones de hecho basado en la prueba presentada. Sostuvo que las prohibiciones de la *Ley Antidiscrimen en el Empleo, supra,* no eran aplicables por ir dirigidas a la empresa privada. Ello, máxime que la AVP no era una instrumentalidad o corporación pública con personalidad jurídica independiente del Gobierno; carecía de la capacidad para demandar, ser demandada, generar ingreso propio, tener autonomía fiscal para realizar préstamos, emitir bonos ni cuentas bancarias, ni contar con una Junta de Directores. Asimismo, planteó que no aplicaba la *Ley para Garantizar la Igualdad de Derecho al Empleo, supra,* la cual exceptuaba a la Rama Ejecutiva.

La OPG alegó que el sueldo de la señora Elías Díaz se determinó de conformidad con el principio de mérito y las leyes. Expresó que la diferencia salarial con otros empleados, tanto de hombres y mujeres, se demostró con los planes de clasificación y retribución gubernamental. También, sostuvo que la señora Elías Díaz nunca ocupó la posición de contador principal del Área de Cuentas por Pagar en Propiedad. Por otro lado, destacó que la apelante no pudo establecer un caso *prima facie* de represalias en su contra.

En atención a los errores planteados, procederemos a exponer la normativa jurídica pertinente a este recurso.

**II.**

**A. Sentencia Sumaria**

La sentencia sumaria es un mecanismo procesal que permite que un caso se disponga ágilmente, sin la celebración de un juicio, siempre que no se presenten controversias genuinas de hechos materiales. *Birriel Colón v. Econo y otro*, 213 DPR 80 (2023); *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979 (2022); *SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310, 334 (2021). A esos efectos, un hecho material es uno esencial y pertinente, que puede afectar el resultado de la reclamación conforme al derecho sustantivo aplicable. Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1; *Banco v. Zorrilla y otros,* 2024 TSPR 62; *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010). Además, la controversia sobre el hecho material debe ser real. *Ramos Pérez v. Univisión, supra.* En otras palabras, debe ser "de una calidad suficiente como para que sea necesario que un juez dirima a través de un juicio plenario [...]". *Íd.* Cónsono con lo anterior, la Regla 36.3(e) de Procedimiento Civil, *supra*, R. 36.3 (e), establece que procede dictar una moción de sentencia sumaria "si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial

en cuanto a algún hecho esencial y pertinente [...]". Véase *Birriel Colón v. Econo y otro, supra; Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 109 (2015); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 430 (2013).

Por otra parte, la parte que se opone a la solicitud de sentencia sumaria deberá refutar los hechos materiales que entienda están en disputa con evidencia sustancial. *Birriel Colón v. Supermercado Los Colobos, supra; SLG Fernández-Bernal v. RAD-MAN* et al., *supra*, págs.336-337. Ahora bien, si la petición de sentencia sumaria está sustentada con declaraciones juradas u otra prueba, el oponente no puede descansar en meras alegaciones, sino que debe contestar de una forma tan detallada y específica como lo haya hecho el promovente. *Birriel Colón v. Econo y otro, supra; Ramos Pérez v. Univisión, supra,* pág. 215; Regla 36.3 (c) de Procedimiento Civil, *supra,* R. 36.3 (c). Empero, la ausencia de prueba para refutar la evidencia no conduce a la concesión automática de una moción de sentencia sumaria. *Birriel Colón v. Supermercado Los Colobos, supra; SLG Fernández-Bernal v. RAD-MAN* et al., *supra*, pág. 337.

El Tribunal Supremo estableció en *Meléndez González et al. v. M. Cuebas, supra,* el estándar específico que este Tribunal de Apelaciones debe seguir al revisar denegatorias o concesiones de solicitudes de sentencia sumaria.

Primero, nos encontramos en la misma posición que el foro primario al momento de revisar las mociones de sentencia sumaria. *Íd.,* pág. 118. En otras palabras, se aplicarán los mismos criterios que la Regla 36 de Procedimiento Civil, *supra,* R. 36, le exige al foro *a quo.* Así pues, este Tribunal está llamado a llevar a cabo una *revisión de novo.* Sin embargo, no podemos considerar evidencia que las partes no presentaron ante el TPI, y debemos examinar el expediente de la forma más favorable hacia la parte opositora de la moción de sentencia sumaria, realizando todas las inferencias permisibles a su

favor. *Meléndez González et al. v. M. Cuebas, supra,* pág. 116.

Segundo, al encontrarnos en la misma posición que el foro *a quo*, debemos revisar que tanto la petición de sentencia sumaria como su oposición cumplan con los requisitos de la Regla 36 de Procedimiento Civil, *supra*, y los discutidos en el caso *de SLG Zapata Rivera v. J.F. Montalvo, supra; Meléndez González et al. v. M. Cuebas, supra, pág.* 118.

Por último, si este Tribunal determina que no existen hechos materiales en controversia, entonces procederemos a revisar si el TPI aplicó correctamente el derecho. *Íd.*, pág. 119.

### B. *Ley Antidiscrimen en el Empleo*

La Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico, prohíbe "discrimen alguno por motivo de raza, color, sexo, nacimiento, origen o condición social, ni ideas policitas o religiosas" Art. II, Sec. 1, Const. PR, LPRA, Tomo 1. Esta protección constitucional ha de ser frente al Estado. Ante ello, la Asamblea Legislativa extendió dicha protección al ámbito laboral privado. *Rivera Torres v. UPR,* 209 DPR 539 (2022). Con estos fines, se aprobó la *Ley Antidiscrimen en el Empleo, supra,* que tiene el propósito de proteger a los empleados frente al patrono contra el discrimen en la relación de empleo e imponer responsabilidad civil por los daños causados. El objetivo de esta ley es proteger a los empleados de la empresa privada de todo discrimen, aunque es extensiva a los empleados de las agencias o instrumentalidades públicas que operan como negocios o empresas privadas. *Rivera Torres v. UPR,* 209 DPR 539 (2022). A saber:

> [D]urante el trámite legislativo que dio lugar a la aprobación de la Ley Núm. 100-1959, *supra*, se suscitaron varios debates en torno a la aplicación o no de las disposiciones del referido estatuto a los empleados y a las empleadas del gobierno de Puerto Rico. En particular, surgió cierta discusión sobre la exclusión de la definición de "patrono" a aquellas agencias o instrumentalidades del gobierno que no operaban como un negocio o empresa privada. 12 Diario de Sesiones de la Asamblea Legislativa (Senado), T. II, pág. 684 (1959). **Al respecto, varios senadores solicitaron que se enmendara**

> **el texto del proyecto de ley para incluir a todos los empleados gubernamentales, no obstante, dicha enmienda no contó con el aval mayoritario, por lo que fue derrotada.**
>
> [...]
>
> [S]in lugar a dudas, podemos colegir que **la intención de la Asamblea Legislativa al momento de aprobar la pieza legislativa bajo estudio fue crear una distinción y extender la protección de la Ley Núm. 100-1959,** *supra,* **únicamente a aquellos empleados públicos cuyo patrono fuese una agencia o instrumentalidad del gobierno que operara como una empresa o negocio privado con ánimo de lucro.** *Íd.* (Énfasis nuestro).

En tal sentido, los empleados de las agencias gubernamentales que no sean agencias o instrumentalidades públicas que operan como negocios o empresas privadas, no tendrán una causa de acción al amparo de este estatuto.

El Tribunal Supremo esbozó varios criterios para evaluar si una agencia gubernamental funciona como un negocio o una empresa privada. *Huertas v. Cía. Fomento Recreativo,* 147 DPR 12 (1998); *JRT v. Corp. del Conserv. Música PR,* 140 DPR 407 (1996); *Librotex, Inc. v. AAA,* 138 DPR 938 (1995); *AAA v. Unión de Empleados AAA,* 105 DPR 437 (1976). A saber: si los empleados de la agencia están cubiertos por la actual *Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico, supra*; si los servicios prestados por la agencia nunca han sido ofrecidos por la empresa privada, por su naturaleza intrínseca; si la agencia está capacitada para funcionar como una empresa o negocio privado; si, en efecto, la agencia funciona como una empresa o negocio privado; el grado de autonomía fiscal que disfruta la agencia; si se cobra o no un precio o tarifas por el servicio rendido; si los poderes y facultades concedidos en la ley orgánica de la agencia se asemejan fundamentalmente a una empresa privada; si la agencia tiene o no capacidad para dedicarse en el futuro a negocios lucrativos o actividades que tengan por objeto un beneficio pecuniario. *Íd.*

Igualmente, se puede tomar en consideración la estructura de la agencia, la facultad para demandar y ser demandada ilimitadamente; el poder de obtener fondos propios en el mercado de valores a base de su récord económico sin empañar el crédito del Gobierno; la facultad de adquirir y administrar propiedades sin la intervención del Estado, entre otros criterios. *Íd.*

### C. Administración de la Vivienda Pública

La AVP, adscrita al DVPR, fue creada por virtud de la *Ley Orgánica de la Administración de Vivienda Pública de Puerto Rico,* Ley Núm. 66 del 17 de agosto de 1989, según enmendada, 17 LPRA sec. 1001 et seq. Para lograr los fines propuestos por el referido estatuto, la Asamblea Legislativa le concedió las siguientes responsabilidades:

(a) Planificar, organizar, dirigir y coordinar todas las actividades administrativas de mantenimiento ordinario y extraordinario, limpieza, ornato, modernización y mejoramiento en general de los proyectos de vivienda pública; servicio de deuda incurrida para el desarrollo; gestiones de cobro, arrendamiento o cánones de arrendamiento y alquiler de vivienda pública.

(b) Adoptar métodos y procedimientos ágiles y sencillos para atender en forma efectiva, rápida y oportuna los reclamos de servicios de los que viven en los residenciales públicos y que fomentan una mayor diligencia en la prestación de tales servicios.

(c) Estimular y lograr una participación real y efectiva de los residentes en la administración, mejoramiento, modernización y ornato de sus propios ambientes de vivienda, mediante programas educativos o de trabajo comunitario.

(d) Diseñar y llevar a cabo por sí misma o en coordinación con otras agencias públicas o entidades privadas programas o actividades para enseñar a los residentes de los proyectos de vivienda pública, las destrezas básicas para que puedan realizar por ellos mismos trabajos pequeños de mantenimiento y reparación de sus propias unidades de vivienda.

(e) Desarrollar actitudes e iniciativas en los residentes para enriquecer sus propias vidas, a través de actividades de distinta naturaleza que le provean experiencias diversas de educación, recreación y trabajo.

(f) Lograr que los residentes de residenciales públicos mantengan sus viviendas y áreas de uso común en buen estado y que progresivamente asuman la responsabilidad por tareas y obligaciones de mantenimiento, limpieza, ornato y reparaciones menores comparables a las que asumen las juntas de titulares de proyectos privados de vivienda.

(g) Modificar las prácticas y procedimientos de los programas y servicios integrados bajo su administración, con el fin de agilizar las operaciones de los mismos y propiciar la consecución de los objetivos de esta ley.

(h) Dar agilidad a los procesos de toma de decisiones y a las determinaciones de ejecuciones relacionadas con el ornato, mantenimiento, mejoras y modernización de los residenciales públicos para convertirlos en lugares seguros, atractivos y adecuados.

(i) Gestionar y coordinar con las agencias gubernamentales y con los municipios que se presten a los residentes de servicios esenciales como son los de salud, recreación, educación y servicios sociales, en el mismo residencial público, con el propósito de facilitarle el acceso a tales servicios y facilitar que se brinden en forma integrada, efectiva y ágil.

### D. *Ley para Garantizar la Igualdad de Derecho al Empleo*

De otro lado, la *Ley para Garantizar la Igualdad de Derecho al Empleo, supra*, prohíbe el discrimen por razón de sexo, el cual es declarado como una práctica ilegal de empleo. *Caballer Rivera v. Adriel Toyota et al.*, 200 DPR 120 (2018); *Martínez Kim v. PETCO, Inc., et al.*, 199 DPR 474 (2017); *López Fantauzzi v. 100% Natural*, 181 DPR 92 (2011). La referida ley establece que por razón de sexo "incluye, pero no se limita, debido a o en base de embarazo, parto, o condiciones médicas relacionadas [...]" Art. 2 de la *Ley para Garantizar la Igualdad de Derecho al Empleo, supra*, sec. 1322.

En particular, el Artículo 3 de la *Ley para Garantizar la Igualdad de Derecho al Empleo, supra*, sec. 1323, dispone que constituye una práctica ilegal de empleo que el patrono suspenda, rehúse emplear o despida, o que de cualquier otra forma discrimine con respecto a la compensación, términos o condiciones de empleo de una persona por razón de su sexo. Igualmente, el Artículo 13 (a) del referido estatuto, *supra*, sec. 1333, establece que "[s]erá una práctica ilegal de empleo el que un patrono discrimine entre hombres y mujeres con respecto a beneficios marginales".

El Máximo Foro Judicial estableció lo siguiente:

[C]uando un empleado insta una causa de acción por discrimen por razón de sexo al amparo de la Ley Núm. 100, *supra*, y la Ley Núm. 69, *supra*, surge una presunción de discrimen contra el patrono una vez el empleado establezca en la vista probatoria un caso *prima*

*facie* por la modalidad de discrimen alegada. Según nuestros pronunciamientos jurisprudenciales, un empleado establece un caso *prima facie* de discrimen contra su patrono cuando demuestra en la vista evidenciaria: (1) que hubo un despido o acto perjudicial, (2) que se realizó sin justa causa, y (3) que se cometió algún hecho base cónsono con la modalidad de discrimen alegada. Una vez tal presunción es activada, el patrono puede rebatirla probando que: (1) hubo justa causa para el despido, o (2) que el despido fue por causa de motivos no-discriminatorios, o (3) articulando ambas defensas a la vez. *López Fantauzzi v. 100% Natural*, supra.

### E. Represalias

El Artículo 2 de la *Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial, supra*, sec. 194b, dispone lo siguiente:

> Ningún patrono podrá despedir, amenazar o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico, así como el testimonio, expresión o información que ofrezca o intente ofrecer, verbalmente o por escrito, en los procedimientos internos establecidos de la empresa, o ante cualquier empleado o representante en una posición de autoridad, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley.

Esta ley cobija a todo empleado frente al patrono que pueda tomar algún tipo de represalia por haber incurrido en alguna acción protegida como sería proveer información a algún foro administrativo, legislativo o foro judicial. *Rodríguez Vázquez y otros v. Hosp. Español Auxilio Mutuo*, 2025 TSPR 55. El empleado tiene disponible dos vías probatorias: la vía directa de presentar evidencia directa o circunstancial que demuestre un nexo causal entre la conducta del patrono y el daño sufrido, o la vía indirecta presentar un caso *prima facie* por preponderancia de la prueba. *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656 (2017); *Rivera Menéndez v. Action Services*, 185 DPR 431 (2012); *Rentas Santiago v. Autogermana, Inc.*, 182 DPR 759 (2011). Mediante la vía indirecta, el empleado debe demostrar que (1) participó en la actividad protegida por ley y (2) subsiguientemente fue discriminado en su empleo. *Íd.; SLG Rivera*

*Carrasquillo v. AAA*, 177 DPR 341 (2009); *Marín v. Fastening System Inc.* 142 DPR 499 (1997).

Una vez el empleado establece su caso *prima facie*, el patrono deberá alegar y fundamentar que tuvo una razón legítima y no discriminatoria para tomar la acción adversa. *Íd.*

Esbozada la normativa jurídica, procedemos a aplicarla a los hechos que nos conciernen.

**III.**

En el presente caso, la señora Elías Díaz formuló cuatro (4) señalamientos de error. Como primer error, la apelante sostuvo que el TPI erró al declarar Ha lugar la *Moción de Sentencia Sumaria* presentada por el ELA, aun cuando incumplió con los requisitos de forma establecidos en la Regla 36 de Procedimiento Civil, *supra*, R. 36. Como segundo error, argumentó que el TPI incidió al crear hechos incontrovertidos que el ELA no planteó. Asimismo, como tercer y cuarto error, precisó que el Foro *a quo* erró al no encontrar probado ni conceder un remedio al amparo de la *Ley Antidiscrimen de Puerto Rico, supra*, la *Ley para Garantizar la Igualdad de Derecho al Empleo, supra*, la *Ley para Prohibir y Prevenir el Acoso Laboral en Puerto Rico*, Ley Núm. 90-2020, según enmendada, 29 LPRA sec. 3111 y la *Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial, supra*.

Como cuestión de umbral, nos corresponde revisar *de novo* la solicitud de sentencia sumaria, así como su oposición. Efectuado tal ejercicio, concluimos que tanto la señora Elías Díaz como el ELA cumplieron con los requisitos de forma dispuestos en la Regla 36 de Procedimiento Civil, *supra*, R. 36. Cónsono con lo anterior, el TPI no cometió el primer señalamiento de error, ya que ambas partes cumplieron con la mencionada regla procesal. Así las cosas, procede revisar si en este caso realmente existían hechos materiales en controversia.

De una lectura integral de los documentos relacionados con la solicitud de sentencia sumaria y su oposición, dimana la inexistencia de una controversia real y sustancial sobre los hechos materiales de este caso que requiriera dirimir en un juicio plenario. Ello, máxime que las controversias planteadas por la apelante estaban relacionadas a asuntos de derecho. Cabe destacar que el TPI fundamentó cabalmente sus determinaciones de hechos con la propia evidencia presentada por las partes. Por cuanto, el TPI no cometió el segundo error señalado por la señora Elías Díaz al formular hechos incontrovertidos en base a la prueba que las partes presentaron. Al no existir hechos materiales en controversia, nos corresponde revisar si el TPI aplicó correctamente el derecho.

Con respecto a la reclamación de discrimen al amparo de la *Ley Antidiscrimen en el Empleo, supra,* el TPI tenía razón al resolver que el referido estatuto no era aplicable a este caso, por lo que procedía desestimar dicha causa de acción. Es norma reiterada que dicha ley no es extensible a los empleados gubernamentales, excepto a aquellos que laboren en agencias e instrumentalidades gubernamentales que operen como negocios o empresas privadas. Como bien señala la OPG, la apelante no demostró que su patrono, la AVP, era una agencia que funcionaba como negocio o empresa privada. Además, de una lectura sosegada de la *Ley Orgánica de la Administración de Vivienda Pública de Puerto Rico,* surgió palpablemente que las responsabilidades y facultades que la Asamblea Legislativa le delegó a tal agencia en nada están relacionadas con la capacidad de operar un negocio o empresa privada o dedicarse a actividades lucrativas. Asimismo, ante nos no se demostró que la AVP tuviese la facultad para demandar y ser demandada por sí sola, obtener fondos propios en el mercado de valores en base a su récord económico o adquirir y administrar propiedades, sin la intervención del Estado.

Por otro lado, en lo atinente a la reclamación de discrimen por razón de sexo a tenor con la *Ley para Garantizar la Igualdad de Derecho al Empleo, supra,* el Foro Primario actuó correctamente al determinar que la señora Elías Díaz no demostró que su patrono actuó de manera discriminatoria en su contra. En primer lugar, el apelado demostró que el sueldo de la señora Elías Díaz correspondía a la escala salarial de su puesto de contador principal en el Plan de Clasificación y Retribución para el Servicio de Carrera del Gobierno, indistintamente el sexo del empleado o de la empleada. Es decir, la escala de salario que se le aplicó a la apelante no establecía una diferencia salarial por sexo. Ello, principalmente cuando había empleados y empleadas del mismo puesto que tenía un salario superior, en vista de que se les honró el salario que recibían en la Corporación de Renovación Urbana y Vivienda (CRUV), el cual era mayor a la escala mínima de contador principal. Por lo tanto, no se puede apreciar un discrimen por género en comparación con los empleados varones.

En segundo lugar, la señora Elías Díaz no evidenció que fue despojada de su puesto como contador principal en la División de Cuentas por Pagar y reemplazada por un hombre más joven en atención a un ánimo discriminatorio. De la prueba presentada surgió que desde el año 2002, la apelante estaba contratada en la División de Sistemas de Información, excepto por el tiempo que estuvo de destaque en la División de Cuentas por Pagar hasta que cesó la necesidad de servicio. Ello, por reclutarse al señor Claudio Ferrer, Jr., para ocupar el puesto vacante. Por ello, la agencia reubicó a la apelante en el lugar de empleo al que fue contratada.

A raíz de lo anterior, no tenía razón la señora Elías Díaz al indicar que el Foro *a quo* incidió al concluir que no tenía derecho a remedio alguno de discrimen o represalia al amparo de las leyes antes discutidas. De una meticulosa lectura *de novo* de las mociones y de

los documentos relacionados a la solicitud de sentencia sumaria no surgió un ápice de evidencia sobre que la apelante sufrió un acto perjudicial y discriminatorio al ser injustificadamente despojada de su puesto por un varón menor en edad, preparación académica y experiencia.

Por último, el TPI actuó correctamente al concluir que la señora Elías Díaz no prevaleció en su reclamo de represalias por virtud de la *Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial, supra.* En este caso, la apelante adujo que la AVP la reubicó de su puesto como contadora principal en la División de Cuentas a Pagar a la División de Sistemas de Información por represalias a que se querelló administrativamente por acoso y diferencia salarial. Sin embargo, la apelante no logró demostrar que su patrono ejerció una conducta antagónica en su contra como represalia por participar en una actividad protegida por ley. Pues, del expediente ante nuestra consideración, no surgió que el motivo para la reubicación de la señora Elías Díaz fue su radicación de querellas administrativas.

De la prueba presentada por el Estado resultó que el puesto de contador principal en la División de Cuentas a Pagar estaba vacante, por lo que la AVP realizó una convocatoria de empleo interna para los empleados de la Rama Ejecutiva. Una vez se seleccionó al empleado que ocuparía dicho puesto, cesó la necesidad de cubrir el puesto, la agencia terminó el destaque de la señora Elías Díaz y la reubicó en el puesto al cual tenía contratación desde el año 2002 como contadora principal en la División de Sistemas de Información. Los anteriores hechos no demuestran un nexo causal entre su acción protegida de querellarse administrativamente y una determinación adversa de parte de la AVP en su contra. La decisión de la agencia se justificó en necesidades operativas legítimas y no en un antagonismo derivado de la actividad protegida de la apelante.

Ante ello, el Foro apelado no cometió el cuarto señalamiento de error al concluir que la señora Elías Díaz no demostró hechos que hicieran entrever que tenía derecho a una causa de acción de represalia.

Por todo lo anterior, se confirma la *Sentencia* apelada en todos sus extremos.

## IV.

Por las razones que anteceden, se confirma la *Sentencia* dictada por el Foro Primario.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones
